ALBERT H. HUBBARD v. JOHN P. McNAUGHTON, WILLIAM A. BLAKE AND WILLIAM BLASS.

*General assignment—Stipulation for release.*

Where a bill in aid of execution alleges fraud, and has been answered, and the parties have been sworn, the objection that the allegations of fraud are too general cannot be raised.

Whether an answer can be used in place of a special demurrer for the lack of specific averments of facts that have been broadly enough averred—Q.

Bills complaining of fraudulent intent can hardly contain very special averments.

Evidence is not to be set out in a bill.

Bills of discovery may lie to draw out matters that must necessarily be confined to the knowledge of defendants.

Mere inquiry by a creditor to ascertain whether it would be more for his advantage to approve or contest an assignment made by the debtor, is not dishonest or unreasonable, and is not in itself equivalent to an inducement to others to act upon it.

The fraudulent character of an assignment does not depend on the assignor's opinion that what he does is not fraud in law.

An assignment for the benefit of creditors is fraudulent if property is withheld that should be put into it, and if the assignors give away or place excessive liens on property that should not be so disposed of.

A general assignment is invalidated by a clause purporting to bind the creditors to agree to it and to release their claims in full and discharge the assignor from all liabilities as soon as their just proportion of the proceeds is paid to them.—COOLEY, J. dissents.

An insolvent debtor cannot dictate to his creditors terms that shall make him independent of his legal obligations.

Appeal from Kalamazoo.    Submitted January 16. Decided April 8.

BILL in aid of execution.    Dismissed.    Complainant appeals.

*Dallas Boudeman* for complainant.    A clause in a general assignment whereby the debtors are bound to release the assignor is evidence of a fraudulent intent to delay, and invalidates the assignment, *Grover v. Wakeman* 11 Wend. 189; *Henderson v. Bliss* 8 Ind. 100; *Butler v. Jaffray* 12 Ind. 504; *McFarland v. Birdsall* 14 Ind. 126; *Ingraham v. Wheeler* 6 Conn. 281; *Armstrong v. Byrne* 1 Edw. Ch. 79; *Atkinson v. Jordan* 5 Ohio 293; *Hoffman v. Mackall* 5 Ohio St. 124; *Brown v. Knox* 6 Mo. 302; *Swearingen v. Slicer* 5 Mo. 241; *Drake v. Rogers* 6 Mo. 317; *West v. Snodgrass* 17 Ala. 549; Burrell on Assignments (Bish. ed.) §§ 192–6, 331–43; see *Brashear v. West* 7 Pet. 608; *Howell v. Edgar* 3 Scam. 417; *Ramsdell v.*

*Sigerson* 2 Gilm. 78, 83; *Marsh v. Gilbert* 5 McL. 117; *Pierson v. Manning* 2 Mich. 447; *Goodrich v. Downs* 6 Hill 438.

*E. M. Irish* for defendants.    A bill for relief, based on a charge of fraud, is demurrable if the allegations are so general as not to show on what the charge of fraud is based, 1 Dan. Ch. Pr. 335; *Cresset v. Mitton* 1 Ves. Jr. 449; *Marr's Appeal* 78 Penn. St. 66; *Page v. Olcott* 28 Vt. 465; *Pendleton v. Galloway* 9 Hammond (O.) 178: *Conway v. Ellison* 14 Ark. 361; *Blakeney v. Ferguson* 3 Eng. (Ark.) 275; *Talbott v. Tarlton* 5 J. J. Marsh. 641.

CAMPBELL, J.    Complainant filed her bill as an execution creditor in aid of a levy upon lands.    McNaughton and Blass were the judgment debtors against whose property the execution was directed, and Blake is assignee under a general assignment dated February 2, 1878, which is attacked as fraudulent against creditors.

The bill avers a fraudulent intent and also sets up as a specific objection to the assignment that it imposes a release from creditors as a condition of receiving dividends.

Before considering the merits it is proper to notice two objections—one to the sufficiency of the bill and its averments, and the other in the nature of a waiver of objection to the assignment.

It is claimed that the allegations of fraud are too general, and that this defect has been properly demurred to in the answer.    The answer, however, has been put in denying fraud and raising all necessary issues, and testimony has been taken.    It is very questionable whether an answer can be made use of in lieu of a special demurrer for lack of specific averments of that which is averred broadly enough if too generally.    But there are difficulties in requiring very special averments in cases of fraudulent intent, and the rules of pleading do not contemplate that evidence shall be set out in a bill.

*Tong v. Marvin* 15 Mich. 60.   No universal rule can be laid down where most of the facts must necessarily be within the knowledge of defendants.   Under the old practice, before parties became competent as witnesses it was often necessary to draw out such matter by discovery, and it is still competent, although not common, to do so.   We are not satisfied that the bill before us is open to serious criticism, but where it has been answered, and the parties themselves have been sworn, there would be no propriety in listening to such an objection now.

· We do not find any satisfactory evidence that complainant ever induced the assignee or any other person to act upon the understanding that he was willing to accept the assignment as valid.   Mere inquiry to ascertain whether it would be profitable for him to do so is not in any way equivalent to inducing others to act upon it, and no one was misled by him.   It was not dishonest or unreasonable to make such inquiry, or to consider whether he could do better by approving than by contesting it.

The defects relied on are acts in fraud of creditors, and fraudulent provisions in the assignment.

It appears affirmatively that lands which should have been included were not included, and that no transfer was made to the assignee of this excepted property until April 11th, 1878, something more than two months after the assignment, and—unless the judgment was more speedily obtained than usual,—after the complainant's suit was commenced.   It also appears pretty clearly that chattel mortgages · were given on the partnership stock on the day or next day but one preceding the assignment, to relatives or near friends of the mortgagors for amounts exceeding the debts due them.   It also appears that a large quantity of notes belonging to the firm was paid over at that time to the wife of one of the firm, at not far from $300 less than their face upon an old note held by her which was in part without consideration.

This note does not seem, however, to have been a dishonest transaction, but it was not a partnership liability, but, if valid at all, a private note of the husband, Mr. Blass.

The fraudulent character of an assignment cannot depend upon the opinions of the assignors that what they do is not legally fraudulent. If they withhold from the assignment what should be put into it, and if they make gifts or excessive liens on property which should not be thus encumbered or given away, it is a fraud, and their belief that it is not will not save it from the consequences of fraud. See *Price v. Haynes* 37 Mich. 487; *Smith v. Mitchell* 12 Mich. 180.

The amounts thus withheld or encumbered made up a large percentage of the assets, and materially cut down the probable dividends. But beyond this we think the assignment contains a provision which cannot be sustained. After providing in a proper manner for paying over the proceeds to creditors ratably in certain classes, it ends with this clause:

"And the creditors of the said parties of the first part agree to their said assignment, and that they will, as soon as their just proportion of the proceeds of said property shall be paid to them, release their claims in full and discharge said parties from all liabilities to them."

We cannot accede to the correctness of the suggestion that this clause is surplusage and not intended to bind the creditors. The assignment must be taken together, and we think the only reasonable construction it will bear is that every creditor by accepting his dividends releases the debtors.

Such a condition has been maintained in some States. But it seems to us to be entirely repugnant to the whole theory of general assignments. While a debtor at the common law, and until restrained by statute, could pay creditors in such order of preference as he chose, he was nevertheless bound to devote all his unexempted property unreservedly to the payment of his debts. Under this

assignment, if all the creditors should decline giving releases, the whole trust would fail, if this condition were enforced.   An insolvent debtor has no right to dictate terms which shall make him independent of his legal obligations.   It may be that this is not technically a trust for his own benefit,—which would be in plain violation of law,—but it is practically so, and accomplishes more sweeping results.   If the property were not assigned, creditors could by legal process exhaust it and still leave him liable on all debts not fully satisfied.   A general assignment can only change the method of applying property in payment, by what ought to be a fairer and less wasteful division.   But it is contrary to justice and against public policy to allow debtors to coerce their creditors into releasing their debts.

The New York doctrine, which is set out in the cases collected in Burrill on Assignments, 331, 343, appears to us the sound rule on this subject, and most in harmony with our own decisions on the general subject of assignments.   This particular question has not been formally before us.   See also *Spencer v. Slater* 4 Q. B. Div. 13.

The decree below dismissing the bill must be reversed with costs of both courts and a decree entered holding the assignment void as against complainant's levy.

MARSTON, C. J., and GRAVES, J., concurred.

COOLEY, J. (dissenting).   I have not found in the proofs in this case any evidence of the frauds charged in the bill.   Neither do I think that the assignment is void on its face.   The clause supposed to invalidate it is the following:   "And the creditors of said party of the first part agree to their said assignment, and that they will as soon as their just proportion of the proceeds of said property shall be paid to them, release their said claim in full and discharge said parties from all liability to them."   This clause is inserted in an assignment not signed or intended to be signed by the creditors, and

which contains no provision depriving creditors of dividends under the assignment in case they refuse to assent. On the contrary the assignee is to pay to the several creditors equally in proportion to their several demands, and the creditors may demand and recover their proportions, without entering into any stipulations or submitting to any conditions whatsoever. If any consent to a discharge of the assignors is to be implied as against the creditors, it must spring from the fact that they accept dividends under the assignment: but when it is made the imperative duty of the assignee to pay these without exacting conditions, and when no trust is reserved in favor of the assignors until all debts are paid in full, there seems to be no foundation whatever for an implied release. Any creditor whom the assignee should refuse to pay ratably would be entitled to call him to account in equity, and it could be no defense that the creditor refused to release, so long as the assignees have required payment to all unconditionally. And surely the receipt of that which the law entitles one to demand as of right cannot be construed into an acceptance of conditions.