# ANDERS LARSEN v. UTAH LOAN & TRUST CO.

FRAUD—BANKS AND BANKING—SPECIAL DEPOSIT—FRAUD ON DEPOSITOR
—ACTION —LIMITATIONS—COMPLAINT—EVIDENCE—ADMISSIBILITY—
APPEAL.

1. A complaint alleging that plaintiff made a special deposit with defendant bank, to be loaned on real estate, but that the bank loaned it to H. without any security, and knowing that he was insolvent, is sufficient to support a recovery for fraud on the part of the bank in procuring H., who was indebted to it, to execute a new note to plaintiff, and thereupon transferring the amount of the loan from the plaintiff's account to that of the bank.

2. Limitations do not commence to run against an action for fraud till the discovery of the fraud, or of facts sufficient to put an ordinarily intelligent person on inquiry.

3. Revised Statutes, section 2877, subdivision 4, providing that an action for fraud shall not be deemed to have accrued till the discovery of facts constituting the fraud, applies to the fraud of a bank in loaning the money of a depositor in a different manner than he directs, for the benefit of the bank, though the fraud is not intentional.

4. Compiled Laws 1888, section 3154, providing that the statute of limitations shall not apply to actions to recover money or other property deposited with a bank, applies to an action to recover a special deposit which the bank is authorized to loan on real estate security as the agent of the depositor.

5. Where the allegations of fraud in a complaint are general, but no objections are made thereto in the trial court, the defect is waived, and can not be raised on appeal.

6. Where a bank receives a special deposit to loan on real estate security, it is guilty of fraud in loaning the money to an insolvent without taking security therefor.

7. The evidence in an action against a bank for fraud in loaning money deposited to be loaned on real estate security showed that certain notes owing to the bank from an officer thereof, and secured by a trust deed, which also secured other notes, were transferred to the

plaintiff, who received payments thereon. The plaintiff testified that he supposed that the loan was made directly to him. *Held,* that it was error to strike out plaintiff's testimony that the bank officers told him that the trust deed covered property which was not included therein, since it tends to rebut the theory that plaintiff received the notes with the knowledge of the facts.

8. A bank having money of a depositor to loan on real estate security transferred to him several notes payable to it and secured by a trust deed; and the cashier testified, in an action by the depositor against the bank for fraud, that the rest of the notes were assigned to the cashier to secure an indebtedness due him from the bank, and that he foreclosed the trust deed, purchased the land, and secured a deficiency judgment against the mortgagee. *Held,* that it was error to refuse to allow him to be asked if he paid the sheriff the money on the sale, or if he assigned the judgment to the bank; it being a part of the transaction in issue.

9. Where a bank, having money of a depositor to loan on real estate security, transfers to him certain notes owing the bank, and secured by a trust deed, and the depositor brings action for fraud therein, it is error to admit evidence that the security was sufficient at the time the loan was made by the bank, but it should have been limited to the time when the notes were transferred to the depositor.

10. A bank receiving money to loan on real estate security is guilty of fraud in transferring notes so secured and owned by it to its principal, which it is not willing to recommend without qualification.

Decided April 24, 1901.

Appeal from District Court, Weber county.—*Hon. Charles H. Hart,* Judge.

Action by Anders Larsen against the Utah Loan & Trust Company for fraud in loaning plaintiff's money. From a judgment in favor of the defendant, plaintiff appeals.

REVERSED.

The plaintiff complains, alleging, in substance, that on the twenty-seventh day of April, 1894, he, having a large amount

of money, made an agreement with the defendant bank that it should loan the same, taking good inside real-estate security therefor, within the business portion of Ogden City, Utah, at thirty per cent of the value thereof, with ten per cent interest, and collect the interest and principal for the plaintiff, and charge him one per cent on the capital loaned, and five per cent from the interest so collected, as compensation for its services, and that the defendant should use due diligence, care, and caution to prevent any loss to plaintiff, and that in consideration thereof plaintiff's money was left with said bank; that on the twenty-seventh day of April, 1894, defendant carelessly, negligently, and fraudulently loaned $700 of the plaintiff's money so deposited to L. C. Henderson and H. H. Henderson on their promissory note, maturing April 27, 1896, without taking any security whatever for the payment of the note, defendant at the time well knowing that each and both of said makers of said note were wholly insolvent, and that said note was worthless; that no interest or principal has ever been collected on said note, and that the same was lost to the plaintiff, to his damage, etc.; that plaintiff did not discover the fraud, negligence, and carelessness of the defendant until March 1, 1898. As a second cause of action, plaintiff alleges that in pursuance of the same agreement the defendant took of the money belonging to plaintiff, so in said defendant's hands, $800, and carelessly, negligently, and fraudulently, in violation of the rights of the plaintiff, and in disregard of the agreement, loaned the same to one William Russell, on or about the first day of May, 1895, without taking any real estate security whatever therefor, and without taking any security except one hundred shares of the capital stock of the South Ogden Land and Building Company, which was wholly worthless, and that said Russell was then and there, and since has been, insolvent, and that by reason of the negligence, carelessness, and fraudulent conduct of the defendant

aforesaid, plaintiff has lost said $800 and interest thereon; that said plaintiff did not discover the fraud, carelessness, and negligence of the defendant herein until March, 1898. For a third cause of action, plaintiff alleges, in substance, the same agreement as aforesaid, and that on the first day of April, 1894, the defendant loaned $12,000 to L. W. Shurtliff, taking therefor eight promissory notes payable to defendant, due January 1, 1896; that subsequent to said loan, and about the twelfth day of July, 1894, plaintiff having on deposit in said defendant bank $3,000, said defendant, without plaintiff's knowledge or consent, and in violation of his rights, took and appropriated said $3,000 of plaintiff's money so deposited with it, and in lieu thereof fraudulently pretended to give said plaintiff two of the eight promissory notes so given to the defendant by said Shurtliff, aggregating $3,000, said sum being secured by a trust deed, which trust deed also secured the further payment of $9,000 represented by the other notes so held by the defendant; that by the terms of the agreement plaintiff left said money with said bank to be loaned as aforesaid, in said first count set forth, and defendant was to collect the principal and interest thereon, and to account to the plaintiff therefor, without any loss whatever to the plaintiff, and to use due diligence and care in the transaction of the business; that said defendant did not use due care or diligence in loaning out said $3,000, or any other amount, but, on the contrary, not regarding its duty to plaintiff in that behalf, carelessly, negligently, and fraudulently, and without regard to the rights of the plaintiff, represented to him that it had loaned said sum to Mr. Shurtliff, who was the vice-president and a director of the defendant corporation, and that it had taken as security for the said $3,000 a trust deed on good real estate to secure its payment, whereas, in truth and in fact, as defendant well knew, it had not loaned $3,000 of plaintiff's money to said Shurtliff, but, on the contrary, had loaned $12,000 of its own

money to Shurtliff, and had taken a trust deed to secure its payment to itself, which security was wholly inadequate to secure the payment of said notes, said bank knowing that the said Shurtliff was then and there wholly insolvent and unable to pay his obligations; that on March 1, 1897, in fraud of plaintiff's rights, defendant indorsed two of said notes, amounting to $3,000, to plaintiff, without recourse, and, without the knowledge or consent of the plaintiff, took $3,000 of plaintiff's money and passed it to the credit of the defendant, by reason of which fraud, negligence, and carelessness the plaintiff has lost said $3,000 and interest; that until March 1, 1898, plaintiff did not know and was not informed that said real estate was given to secure $9,000 in notes held by the defendant, in addition to said $3,000 so indorsed to the plaintiff; that said notes and said money all the time remained in the possession of the defendant, and are still in its possession; that plaintiff is a Scandinavian by birth, and can not understand, or read, write, or speak, the English language, except in an imperfect manner, and was incapable of looking after and taking care of his own business, and therefore committed the same to the defendant, that, because of the negligence aforesaid of the defendant, he has suffered and claims $4,500 damages; that plaintiff did not discover the fraud, negligence, and carelessness of the defendant as aforesaid until about March 1, 1898. The answer admits loaning the money under authority from plaintiff, denies the material allegations of the complaint, and sets up the statute of limitations, and a release from all liability in the premises, signed by the defendant.

The plaintiff's testimony tends to show that on the twenty-seventh day of April, 1894, the defendant bank held a note against H. H. Henderson for about $800, and had been carrying said loan since March, 1892; that on the fourth day of May, 1894, the bank charged the plaintiff on its books with $700, and cancelled the Henderson note, transferring the said

loan from itself to the plaintiff, but took a new note to the
plaintiff for the same debt; that the note made in favor of
the plaintiff is signed by H. H. Henderson and L. C. Hender-
son, and bears date April 27, 1894. Said note was in the
handwriting of Mr. H. H. Rolapp, cashier of the bank. It
was conceded that Mr. H. H. Henderson was insolvent at that
time. The note could not be collected. It was not secured
by mortgage on any real estate. Proof was also given tending
to show a contract by the defendant to loan plaintiff's money
upon inside real estate in Ogden City, secured by mortgage, as
charged in the complaint. Testimony was also offered by the
plaintiff tending to show that the bank loaned Russell $800 of
plaintiff's money May 1, 1895, taking ten shares of the capital
stock of the South Ogden Land and Building Company as
security, and twenty-one shares of Barton stock. The note
was due in one year, but no real estate was taken to secure the
same. This note was also uncollectible, and remained with the
bank, with other notes, in a pouch marked "Larsen," in the
bank vaults. It also appears from the testimony that Mr.
Shurtliff was vice-president of the defendant bank from the
time of its organization in 1889 to 1896, and was indebted to
the bank, and borrowed money from it with which to pay for
his stock. In June, 1894, he was indebted to the bank in the
sum of $13,396, and on that date gave the bank eight notes for
$12,000 of such indebtedness, secured on real estate by a trust
deed, but did not include his residence in such security. The
bank having use for money on July 12, 1894, transferred to
the plaintiff, through Mr. Rolapp, its cashier, two of the
$12,000 Shurtliff notes, which aggregated $3,000. This
transfer was made by charging plaintiff in his account $3,000,
and placing the two notes in question in plaintiff's pouch in
the bank, and the bank indorsed the note without recourse.
These notes were marked in pencil on the back "Larsen." On
the following month a statement was sent to the plaintiff stat-

ing the loan to Shurtliff of $3,000, but without mentioning any security. Plaintiff did not know that the trust deed secured $9,000 additional indebtedness to the $3,000. Mr. Rolapp says that in making loans for the plaintiff he transferred notes held by the bank without plaintiff's knowledge at that particular date, and without advising with him about it; that notes were frequently taken from one loan customer, and transferred to another loan customer, by changing the account of the customer. Sometimes the bank would want to give Larsen $5,000, when he only had $3,000 in the bank, and it would then take some paper from him and transfer it to another loan customer. These transfers were made by simply rubbing off the pencil name written on the back of the note, and substituting another name in its place in pencil, and making an entry in the books of the loan customer's account. The trust deed was not placed in the plaintiff's pouch. The Shurtliff trust deed was foreclosed by Mr. West, Mr. Rolapp's successor as cashier of the bank; but the property was not sufficient to pay the notes, and a deficiency remained. The notes in question were formally transferred to plaintiff's pouch by the cashier of the bank on the first day of March, 1897, by indorsement of the same "without recourse." The plaintiff testified that he knew nothing about the character, security, or irresponsibility of the makers of the notes, or that the notes were not secured by good real estate, until about the first day of March, 1897 or 1898; that all the time he relied upon the bank to do as it had agreed to do, as stated; that he knew President Richards and Cashier Rolapp, and had great confidence in them when he made the contract; that he understood the English language imperfectly, was seventy-six years of age, and was unfit to do business of the character transacted; and that he relied upon the bank to do as it agreed to do, and loan the money on good inside real estate security, on a basis of thirty per cent of its actual cash value, and take real estate security

therefor. The defendant relied upon the statute of limitations, and a written release signed by the plaintiff. The plaintiff claims that the release was never read to him before he signed it; that he did not read it, as he had no glasses, and understood that it only covered an assignment of three certain other mortgages to the defendant for a consideration therein named. On motion of the defendant the court granted a nonsuit as to the first and second causes of action, on the ground that the right of action was barred by the statute of limitations; that no negligence, fraud, or damage was shown. The third cause of action was tried before a jury, and a verdict rendered in favor of the defendant. From the order granting the nonsuit and from the judgment, plaintiff appeals.

*Messrs. Evans & Horn* and *Thomas Maloney* for appellant.

*Messrs. Richards & Allison* for respondent.

PER CURIAM.—The complaint alleges, and the testimony tends to show, that the plaintiff left his money with the bank officers, in whom he relied and had confidence, upon its agreement to loan it on good inside real estate security in Ogden City, at thirty per cent of its value, to be secured by real estate mortgage; that, because of his extreme age, and failure to understand the English language, he so intrusted the whole business to the officers of the bank, relying upon a fulfillment of the trust imposed; that until March, 1897, or 1898, he supposed the agreement had been complied with, and that security had been taken for the money loaned by the bank. Instead of loaning the money referred to in the first cause of action, as plaintiff claims it should have been loaned, on good inside real estate, secured by mortgage, it selected from among its customers one whom it is admitted was known to be insol-

vent, and had him execute a note to the plaintiff, and took $700 of the plaintiff's money to itself, and in this way paid to itself the Henderson loan, and imposed upon the plaintiff a worthless note, thereby relieving itself from probable loss. If the plaintiff's testimony be true, and his theory correct—and we must treat it as so for the purposes of the nonsuit—the bank, in effect, loaned the money to itself and for its own purposes, regardless of the interests of the plaintiff, and in fraud of his rights, and is therefore chargeable with the consequences following the wrongful act, provided the complaint sufficiently charges the fraud shown by the plaintiff's testimony. It is charged in the amended complaint that, in making the $700 loan to Henderson, the defendant carelessly, negligently, and fraudulently failed to take any security whatever for the payment of the note, well knowing that Henderson was wholly insolvent and that the note was worthless. This allegation, in connection with others, while not so specific as it could have been charged, sufficiently alleges that the money was fraudulently loaned to one whom the defendant knew was insolvent. Such an allegation would amount to a charge of fraud, and was sufficient upon which the plaintiff could introduce his proof. The facts necessary to make a case for relief on the ground of fraud are stated. "The fraudulent concealment of a cause of action by the party against whom it exists, preventing the opposite party from acquiring knowledge thereof, will prevent the statute of limitations from commencing to run until the cause of action was, or might have been by reasonable diligence, discovered; and this is true irrespective of statutory provisions as to the cases of fraud and mistake." Cook v. Van Etten, 12 Minn. 522 (Gil. 434) ; Boomer Dist. Tp. v. French, 40 Iowa 601; Findley v. Stewart, 46 Iowa 655; Cowin v. Toole, 31 Iowa 513; Baker v. Joseph, 16 Cal. 173; Currey v. Allen, 34 Cal. 254. Where relief is sought on the ground of fraud, the statute does

not begin to run until the discovery of the fraud, or the dis-
covery of such facts as would put a person of ordinary intelli-
gence and prudence on inquiry.   As we have seen, this dis-
covery was not made until a short time prior to the commence-
ment of this suit—sometime in 1897, and within the two
years limited by statute.   Currey v. Allen, 34 Cal. 254; Moore
v. Moore, 56 Cal. 89; Boyd v. Blankman, 29 Cal. 19, 87 Am.
Dec. 146.   Section 2877, Revised Statutes of Utah, provides
that:   "(4)   An action for relief on the ground of fraud or
mistake; the cause of action in such case not to be deemed to
have accrued until the discovery by the aggrieved party of the
facts constituting the fraud or mistake."   The fraud in this
case consisted in the appropriation of the funds of the plaintiff,
and applying the same in a different manner than was author-
ized, for the defendant's benefit, and to the plaintiff's injury.
While the fraud may not have been intended, nevertheless it
was, in the eye of the law, a fraud, according to plaintiff's
showing.   It was a violation of the confidence imposed by the
plaintiff in the bank to his injury.   Plaintiff claims that the
fact that no security was taken for the loan was not disclosed
until 1897 or 1898, after Mr. West succeeded Mr. Rolapp as
cashier.   While the fund was deposited in the bank for a
special purpose, it was still a deposit, within the meaning of
section 3154, Compiled Laws Utah, 1888, and there was no
limitation of time in which an action to recover it should be
commenced.   This statute reads as follows:   "To actions
brought to recover money or other property deposited with any
bank, banker, trust company, or savings or loan society, there is
no limitation."   While it is true that the allegations of fraud
in the amended complaint were somewhat general, yet it does
not appear that any demurrer was filed or motion made affect-
ing it on this account.   The parties went to trial upon the
complaint without objection.   In such cases it is held that:
"Where, in an action or defense based upon fraud, the plead-

ing fails to allege the facts showing the fraud, the defect should, in general, be taken advantage of by demurrer. The demurrer in such a case is not a confession of the fraud, for a demurrer confesses only matters of fact which are well pleaded. If, however, the issue is made without objection to the pleading or to the evidence of fraud, all objection is deemed waived, and it can not be urged for the first time on appeal that there was no issue of fraud." 9 Enc. Pl. and Prac., 697; Hubbard v. McNaughton, 43 Mich. 220, 5 N. W. 293, 38 Am. Rep. 176; Bonds v. Smith, 106 N. C. 599, 11 S. E. 322; Sukeforth v. Lord, 87 Cal. 399, 25 Pac. 497. It also appears that no security was taken to secure the note set out in the second cause of action in accordance with the contract testified to by the plaintiff, and it also appears that the note and personal security were worthless. Under the facts shown, we are of the opinion that the court erred in granting the nonsuit as to the first and second causes of action named in the complaint.

On the trial of the third cause of action the plaintiff gave testimony to the effect that defendant, by its officers, told him that the trust deed given by Mr. Shurtliff covered the Shurtliff residence. On motion of defendant, this evidence was stricken out, and plaintiff excepted. It appears that Mr. Shurtliff was an officer of the bank, and was indebted to the bank about $13,300; and, to secure $12,000 of this sum, in June, 1894, he gave the bank eight notes secured by a trust deed on property in Ogden that did not include his residence. Two of these notes, amounting to $3,000, were by the cashier of the bank placed in a pouch that Mr. Rolapp called the plaintiff's pouch, where his papers were kept, without indorsement, except that the plaintiff's name was marked on the back of the notes in pencil, and the $3,000 charged to his account. These notes were not formally indorsed to the plaintiff until March, 1897, when the cashier indorsed the same to the plaintiff without recourse. The complaint was filed May

25, 1898. Plaintiff testified, in substance, that he supposed and had been told by the bank officers that the trust deed covered the residence of Mr. Shurtliff, and did not know that the trust deed secured $9,000 owed to the bank, in addition to the $3,000 transferred to his pouch; that the bank statement given to him made no mention of the trust deed. He says that he did not know that the money was loaned to the bank first, and that the two notes were afterwards transferred to him, but supposed the loan was made to him on a good mortgage covering the Shurtliff residence, until Cashier West came into the bank in 1896 and 1897, and after the foreclosure of the Shurtliff mortgage was commenced, and then he found that the residence was not included. The bank claimed that the plaintiff had taken the notes away from the bank at different times to examine the property, and returned them, and had received one payment of interest from Mr. Shurtliff. As we have seen, the amended complaint alleges fraud as one element of the cause of action. We are of the opinion that it was error to strike out the testimony referred to, as it tended to explain plaintiff's theory that he examined the notes, and received the payment relying upon the bank's statement that the loan was secured on the residence. The testimony tends to explain plaintiff's conduct with reference to the notes, and to rebut the theory of the defendant that he knew all about the kind and nature of the security for the notes, and accepted them as a loan for the $3,000. The notes were not formally indorsed to plaintiff until March 1, 1897, and were still left in the plaintiff's pouch in the bank, to which the officers had access. It appears from the testimony of Mr. West, the cashier who succeeded Mr. Rolapp, that, after the two Shurtliff notes had been placed in the plaintiff's pouch, the remaining notes, amounting to $9,000, were assigned to him to secure the bank's indebtedness to him of $5,000 and interest, and that he foreclosed the trust deed, making the plaintiff a party,

and that he bid in the property to himself, and obtained a deficiency judgment. Mr. West was asked if he paid the sheriff the money on the sale, and if he assigned back to the defendant bank the Shurtliff judgment. The court, under objection from the defendant, declined to permit the question to be answered. Under the charge of fraud contained in the complaint, the plaintiff had a right to know what became of the trust deed, and how much money was realized, if anything, from it by the bank. The whole transaction was open to inquiry, as affecting the alleged conduct, fraud, and liability of the bank. The deed secured the payment of the two notes in question, and if the bank received a consideration therefrom, and concealed the same after the assignment, that fact would tend to bear upon and characterize the acts of the defendant.

The witness Dee was asked the following question by the defendant: "Suppose you had $12,000, of your own money, you desired to loan at interest; would you have loaned it on that security at that time?" Under objection, the witness answered that he would. The question before the court was whether the plaintiff's money was fraudulently or negligently loaned or converted. The trust deed and the eight notes from Shurtliff to the bank for $12,000 were taken June 21, 1894, to secure a long-standing, past-due indebtedness to the bank. It was not given to the plaintiff, and no money was loaned by the bank to Shurtliff at the time. The transaction was not a loan of the plaintiff's money, but was the making of a contract of indorsement, without recourse, by the bank with its principal, for its benefit. On July 12, 1894, forty days after the loan, the two notes in question were passed to the plaintiff's pouch in the bank without any formal indorsement, and he was charged with the $3,000. The formal indorsement, "without recourse," was not made to plaintiff until March 1, 1897. Whether the witness would have loaned the money on the property at that date of the trust deed was not material or

Larsen v. Utah Loan & Trust Co.

competent.    What the witness might have done with reference
to making loan on the property did not show, or tend to show,
its value, nor the sufficiency of the security; nor was plaintiff's
money loaned upon that security at the time referred to.
Whether the security was reasonably sufficient to secure the
two notes at the time they were transferred to the plaintiff,
and what the property was worth at that time, and whether it
was sufficient security, was a proper inquiry, on the defendant's
theory of the case.    It is the duty of an agent who loans money
for his principal to exercise an honest judgment and use rea-
sonable care and diligence in the selection of the security, and
the performance of those other acts necessary to perfect and
protect the security.    If he fails in the performance of this
duty, or through any fraud or connivance loans the money to
himself, or transfers his own paper to the principal, which he
is not willing to recommend without qualification; if he fraud-
ulently loans the money contrary to the express instructions
of his principal, and loss thereby results to him—the agent is
responsible for the loss.    Mechem, Ag., secs. 473, 474, 509.

The record in this case is quite incomplete, and we are
not able to discover from it any good reason to sustain other
assignments of error.    Because of the errors herein expressed,
it is deemed proper to say that, should either party hereafter
desire to amend their pleadings, such amendments may be
allowed, in the discretion of the trial court, on such reasonable
terms as said court may direct.    For the errors referred to,
the judgment of the district court is reversed, with costs, and
the case remanded, with directions to grant a new trial.