Vincent **CHIODO** et al., Appellants,

v.

**GENERAL WATERWORKS CORPORATION**, a corporation, Appellee.

No. 8876.

United States Court of Appeals
Tenth Circuit.

July 3, 1967.

862

Calvin A. Behle, Salt Lake City, Utah, (Keith E. Taylor, Parsons, Behle, Evans & Latimer, and Adam M. Duncan, Salt Lake City, Utah, on the brief), for appellants.

Peter W. Billings, Salt Lake City, Utah, (Dale E. Anderson and Robert W. Edwards, Salt Lake City, Utah, on the brief), for appellee.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

This case was tried to a jury and submitted upon special interrogatories under Rule 49(a). Judgment was entered upon the answers to the special interrogatories in favor of the appellee (defendant below) and the appeal is from that judgment.

Appellants, who were plaintiffs in the trial court, brought the action for rescission of a corporate stock transaction or in the alternative to recover damages by reason of the alleged violation by appellee-defendant of Securities and Exchange Commission Rule 10b–5 (Title 17, C.F.R. Section 240.10b–5) promulgated pursuant to 15 U.S.C. § 78j.

A detailed factual statement is necessary for an understanding and determination of the issues presented. On September 23, 1960, appellants Vincent Chiodo and his wife, Ethel Chiodo, who owned the controlling interest in the Bear River Telephone Company, a corporation, entered into an "Agreement and Plan of Reorganization" with appellee, General Waterworks Corporation. By the terms of this agreement, appellee agreed to deliver to the Chiodos 2.7 shares of its preferred stock in exchange for each share of Bear River common stock delivered to it by Chiodos. Under this agreement, on December 20, 1960, Chiodos delivered to General Waterworks 2481½ shares of Bear River stock and General Waterworks delivered the agreed number of shares of its preferred stock to Chiodos and other stockholders in Bear River.

Appellant Vincent Chiodo, in addition to being the largest stockholder in Bear River, had for many years prior to 1960 been the manager of the company. At the time he made the stock exchange agreement with General Waterworks, he procured a side agreement with the same company whereby he was to be retained for a period of ten years as manager of Bear River and his two sons were likewise to retain their employment with the new owners.

The events leading up to this agreement for exchange of stock are pertinent to the issues involved.

Appellant Chiodo acquired the controlling interest in the common stock of Bear River Telephone Company of Tremonton, Utah, in 1943, and at that time became manager of the telephone operation. In 1957, a missile manufacturing concern commenced operations in the area served by Bear River and a substantial expansion of telephone service in the area was necessitated. About this same time Chiodo began to have some thoughts about the sale of his company. In 1958 he asked Kander & Company of Washington, D. C., a firm that specialized in buying and selling telephone companies, to find him a buyer for his company. Lobred, who worked for Kander, procured an offer of $200,000.00 for the company in 1959 but Chiodo refused the offer. Lobred later visited Chiodo, looked over the Bear River Company and suggested an asking price of $250,000.00 for the company.[1] After his visit, Chiodo advised Lobred that he would like to make a stock trade with some company paying dividends. It was on this basis that Lobred approached appellee company in February, 1960, and some interest in the purchase was shown by an agent of General Waterworks. A meeting of the interested parties, including Lobred, was had in Chicago on May 4, 1960, in the office of appellee's attorney. A general discussion of the deal ensued and the meeting ended with an understanding that one Sanders, who had charge of appellee's telephone company's operations would personally inspect the Bear River property and Chiodo would be furnished detailed information about appellee company's various kinds of stock. The stock information was furnished by appellee for study by Chiodo and his attorney and Sanders inspected the Bear River properties.

The president of appellee company, Howard Butcher, called Chiodo on the telephone and discussed the making of a deal. A price of $250,000.00 for Bear River was discussed. Although the testimony about what was said at this time is conflicting, from all of the testimony it is apparent that this became an informally accepted price before the conversation was concluded, subject only to the working out of a plan for exchange of stock and taking care of some other details.

Thereafter, a satisfactory agreement was reached concerning the employment of Chiodo and his sons, approval of the sale was obtained from the Utah Public Service Commission and the transaction was closed in December, 1960.

In July, 1961, Chiodo and his sons, at a meeting in Denver with representatives of General Waterworks, were told of the possibility of a sale of the Bear River plant to Mountain States Telephone and Telegraph Company in which event Chiodo would be discharged from his employment. Chiodo began selling his General Waterworks stock soon after this meeting. The sale of Bear River to Mountain States did not materialize but a contract for the sale of the plant to another company was entered into by General Waterworks on October 19, 1964, and the sale was consummated in March, 1965. Chiodo had been discharged as manager of Bear River in December, 1963. He then brought suit in the Utah state court against the Bear River Company and General Waterworks and recovered a judgment in the amount of $81,264.99 under his separate employment contract.

Our first difficulty with this appeal is the sufficiency of proof to make a case. At the outset, all of the facts concerning the transaction between appellants and appellee leave us with grave doubts as to the applicability of Section 10b–5. This was something more than a corporate stock transaction, it was actually the sale of a business and the method used to convey control of the business was

---

1. There is evidence in the record to show that on this occasion Chiodo, in effect, stated that he was willing to leave the asking price to Lobred.

suggested by appellants because they derived a tax advantage therefrom and a fixed future income. During the period of time the negotiations between the parties were in progress and when the alleged false representations were made, the parties were not negotiating for the sale of corporate stock but rather for the purchase and sale of a going private business concern. We have doubt that either the Congress in enacting the Securities Exchange Act or the Securities Exchange Commission in promulgating Rule 240.10b–5 had any intention to include a business transaction such as we have here. However, we will not pursue this reasoning because there are other clear reasons why appellants cannot prevail.

Appellants, in their brief, present what they consider the broad issues of the case as follows:

1. Is common law type "reliance" a necessary element in a cause of action claimed to arise under the provisions of Rule 10b–5 duly promulgated in conformance with the provisions of Section 10(b) of the Securities Exchange Act of 1934?

2. If so, may the trial court condition recovery upon specific and substantial "reliance" upon a single misrepresentation, which single misrepresentation is only one of many made in the furtherance of an over-all plan and scheme to purchase a security?

3. Were the appellants, under the facts here, involved, entitled to maintain a claim for rescission?

 The first two of these points, in effect, urge error by the trial judge in his instructions to the jury. These points can be cognizable here only if appellants, at the trial, complied with the clear mandate of Rule 51, F.R.Civ. P. This court has written many times concerning its interpretation of this rule.[2] The cases hold, in substance, that any objections to instructions must be made of record after the court has given his instructions to the jury and before the jury retires to deliberate upon the case; and that, in making such objections, the party objecting must state "distinctly the matter to which he objects and the grounds of his objection."

 We have painstakingly reviewed and considered the record before us on the sufficiency of appellants' objections to the court's instructions and they do not meet the requirements laid down by this court in the long line of decisions cited above. In a footnote we have set out verbatim the pertinent part of the colloquy between the court and counsel as shown by the record which occurred after the instructions here in question were given and prior to the time the jury retired to deliberate.[3]

This determination precludes appellants from raising here any question about the sufficiency of the court's in-

2. Western Transmission Corp. v. Colorado Mainline, 10 Cir., 376 F.2d 470; Pool v. Leone, 10 Cir., 374 F.2d 961; Hardware Mutual Insurance Co. v. Lukken, 10 Cir., 372 F.2d 8; Dunn v. St. Louis-San Francisco Railway Co., 10 Cir., 370 F. 2d 681; Peter Kiewit Sons Co. v. Clayton, 10 Cir., 366 F.2d 551; Locke v. Atchison, Topeka and Santa Fe Railway Co., 10 Cir., 309 F.2d 811; Darter v. Greiner, 10 Cir., 301 F.2d 772; Miller v. Brazel, 10 Cir., 300 F.2d 283; Union Carbide and Carbon Corp. v. Nisely, 10 Cir., 300 F.2d 561; Pridgin v. Wilkinson, 10 Cir., 296 F.2d 74; Federated Mutual Imp. & H. Ins. Co. v. Fairfax Equip. Co., 10 Cir., 261 F.2d 207; Pittman v. Harvey, 10 Cir., 261 F.2d 44; Franklin v. Shelton, 10 Cir., 250 F.2d 92, cert. denied,

355 U.S. 959, 78 S.Ct. 544, 2 L.Ed.2d 533; Western Machinery Co. v. Consolidated Uranium Mines, 10 Cir., 247 F. 2d 685; Hayes v. United States, 10 Cir., 238 F.2d 318, cert. denied, 353 U.S. 983, 77 S.Ct. 1280, 1 L.Ed.2d 1142; Garden City Co. v. Bentrup, 10 Cir., 228 F.2d 334; Solorio v. Atchison, Topeka and Santa Fe Railway Co., 10 Cir., 224 F.2d 544; Jones v. KOMA, 10 Cir., 218 F.2d 530; Chicago, Rock Island & Pacific Railway Company v. Kifer, 10 Cir., 216 F.2d 753, cert. denied, 348 U.S. 917, 75 S.Ct. 299, 99 L.Ed. 719.

3. Following is the pertinent part of the colloquy between court and appellants' counsel about objections to instructions:
 "MR. DUNCAN: The first interrogatory, we think it is error to say that the

structions or of the method used by the court to submit the case under Rule 49 (a), F.R.Civ.P.[4] We are precluded from considering appellants' first two points.

misrepresentation—that the value must have been substantially more than $250,-000. If it were worth $260,000, for example, and the defendant knew it was worth $260,000 and knew it was going to be relied on, we don't feel it had to be substantially more.

"THE COURT: Oh, now we went over these interrogatories in chambers hours ago. I invited any suggestion on the form. As I understand it, this form was approved without prejudice to your basic ideas. In the context of this case, if the jury finds the value was $260,000, they are not going to base a misrepresentation on that. And I'd set aside the verdict, anyway. You can note your exception, but I think that's nonsense.

"MR. DUNCAN: It was advanced in good faith, Your Honor.

"THE COURT: All right. I wish you'd advance those things on form when we've been laboring over these things since 11 o'clock.

"MR. DUNCAN: I think we had.

"THE COURT: It was not mentioned directly or indirectly.

"MR. TAYLOR: This goes to form. But it just dawned on me as the instructions were given—I guess it's Interrogatory No. 3, with respect to Vincent Chiodo—you said if you answer that no, then don't answer the rest. But a number of these other plaintiffs dealt directly. And I would think that conceivably some of them may have relied, even though the jury were to find that Vincent Chiodo because of the special relationship did not. And that would automatically preclude, for example, Ethel or LaRee or someone else who may have directly relied upon Sanders or Hansen from recovery.

"MR. DUNCAN: We did mention that this morning.

"THE COURT: Ethel? She said she relied on her husband. I think I'll stand on that.

"MR. DUNCAN: We asked about that this morning. And for the record—and it's difficult to identify by number—but the instructions with respect to proximately causing, without explaining that there may be several proximate causes. As to reliance, which I think was about 9, that the—the word 'primarily,' as we noted this morning, we felt was objectionable.

"THE COURT: Yes, you did note that this morning.

"MR. DUNCAN: And the item—Instruction No. 4, I think, of defendants, the Court gave in substance. And it related to the only fact you may consider error.

We feel this was unduly restrictive and possibly—

"THE COURT: I see.

"MR. DUNCAN: We feel that this third interrogatory is the most important error, because the third interrogatory, the evidence shows that General Waterworks people talked to more than Vincent Chiodo; for example, his wife, his two sons, his two daughters-in-law. We asked about that this morning, Your Honor, and I thought the Court made that note—

"THE COURT: I thought this form was satisfactory. We did discuss the basic request about primary and substantial. And this ties in with that. I'm willing to stand on the defendant's request in that connection. And in that light my understanding was that this did reflect that basic request.

\* \* \* \* \*.

"MR. DUNCAN: The only issue we feel is extremely vital in this reliance on Chiodo only, when there were statements made to other members of the family. And I think we've noted it, but not merely for the record.

"THE COURT: What about that—that there is some technical merit to the matter?

"MR. BILLINGS: You said in here—

"MR. TAYLOR: The interrogatory is all right. But it was the Court's instruction if they answered 3 negatively they didn't have to go on. I think the interrogatory is fine. It was the statement that if you answer 3 'no' you don't have to answer 4.

"MR. DUNCAN: If Chiodo didn't rely, then it's all over with.

"THE COURT: That's true."

4. Rule 49(a) provides in pertinent part:
"\* \* \* The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

Appellants urge error by the trial court in dismissing the first cause of action alleged in their amended complaint. This cause of action sought rescission of the entire transaction between appellants and appellee. The procedural history of the case is pertinent to a determination of this point. Appellants filed their first complaint on October 2, 1964, in which they sought only to recover damages from appellee. On October 28, appellee filed its motion to dismiss for failure to state a claim, for lack of jurisdiction and for lack of proper venue, which motion apparently was never heard by the court. On February 15, 1965, by leave of court, appellants filed an amended complaint setting out two causes of action, the first for rescission of the entire transaction and the second to recover damages because of fraud.

Appellee, on March 1, filed a motion to dismiss and strike the rescission cause of action for failure to join an indispensable party. In the motion it was alleged that General Waterworks had entered into a contract with Continental Independent Telephone Corporation whereby all of the stock in Bear River owned by appellee was to be transferred to Continental, thus, the court could not issue an effective decree of rescission without having Continental as a party in the case. On March 5 appellants moved for injunctive relief to prevent the stock transfer from appellee to Continental. A hearing was held on this issue on March 9, injunctive relief was denied but appellants were granted leave to tender a proposed amended complaint joining Continental as a party defendant. On April 1 the court granted appellee's motion and struck all claims for rescission from the amended complaint. Appellants filed a second amended complaint on August 3, seeking damages only from appellee and the case proceeded to trial on this pleading.

The trial judge, in open court and upon the record, succinctly gave his reasons for sustaining appellee-defendant's motion to dismiss and strike the rescission cause of action from appellants-plaintiffs' first amended complaint.[5] The record shows that on October 19, 1964, and prior to any claim by appellants for rescission, General Waterworks entered into a contract agreeing to sell all of its stock in Bear River to Continental Independent Telephone Corporation and during March, 1965, had performed under this contract.

■ Judge Pickett, in Williams v. Pacific Royalty Co., 10 Cir., 247 F.2d 672, 675, speaking for this court defined an indispensable party " * * * to be one who not only has an interest in the subject matter of the litigation, but such an interest that a final decree cannot be made without affecting that interest * * *."[6]

---

5. "THE COURT: Well, as to all of the plaintiffs, the motion to dismiss and to strike is granted on the ground of the absence of an indispensable party; to wit, Continental. It is Continental, isn't it?

"MR. BILLINGS: Continental Independent Telephone Company, yes, sir.

"THE COURT: And as to Chiodo, the motion to dismiss the count or claim given to rescission is granted on the ground of election of remedies.

"I do that, mindful of the proposition that the doctrine of election of remedies is not favored in equity and should not be unduly extended, but upon the conviction that in harmony with the three or four cases going up to the circuit from this jurisdiction touching upon those rules, to wit, Estate Counseling Service v. Merrill Lynch, et cetera, [10 Cir.] 303 F.2d 527, United States v. [American] Amalgamated Sugar Company, [10 Cir.] 48 F.2d 156, which is a fringe case which holds that the mere filing of a suit in the law side, rather than the equity side, where there is no credit done with respect to election, and a case in which I went into the matter and I think explored the limits of the doctrine of election, Morgan v. Hidden Splendor Mining Company, [D.C.] 155 F.Supp. 257, there is no question in my mind that here there would be an election of remedies as to Chiodo which would preclude him from obtaining rescission on the present state of the record."

6. See also other Tenth Circuit cases cited there and Thomas v. Colorado Trust

██ The non-joinder of an indispensable party may, although it will not always, require a dismissal. Such party may be added if service of summons is possible and the joinder will not destroy the jurisdiction of the court.[7] The trial judge here admirably exercised judicial discretion, although he dismissed and struck the rescission cause of action, his order of March 9 granted appellants leave to file another amended complaint adding Continental as a party defendant to the rescission cause of action, but such an amended complaint was never filed. A second amended complaint was filed thereafter but rescission was not prayed for.

██ Without a doubt, Continental was an indispensable party to the rescission cause of action and the order of dismissal was good upon that legal basis. However, the trial judge, insofar as appellant Vincent Chiodo was concerned, further supported the dismissal upon the theory of election of remedies. Under the facts of this case we agree with the trial judge. In Estate Counseling Service v. Merrill Lynch, Pierce, Fenner & Smith, 10 Cir., 303 F.2d 527, under Utah law, we applied the doctrine of election of remedies and our decision there was a sound basis for the dismissal here.

██ One of the defenses raised in the trial court by appellee-defendant was the statute of limitations. Neither federal statute nor the rule under which the action is brought provides a period of time for the bringing of an action, therefore, we must look to the Utah statute of limitations respecting such actions.[8] Fraud actions, under the Utah statute, must be brought within three years from the date the fraud is discovered.[9] This action was commenced on October 2, 1964, which, under the clear and undisputed evidence in the record, was more than three years after Chiodo had knowledge of such facts concerning the alleged fraud as would put a person of ordinary intelligence and prudence on inquiry.[10]

In their brief, appellants summarize the alleged false representations relied upon as follows:

"a) Representations that $250,000.00 was a fair and adequate price for the Bear River Stock, and that a regularly traded and marketed, dividend-paying General Waterworks Company stock would be traded therefor."

"b) That appellee was not acquiring the Bear River Stock for resale but that it intended to retain Bear River as an operating unit."

"c) That Chiodo would be employed for a minimum period of ten years with broad managerial powers and assurance of continued employment for the two Chiodo boys."

██ Insofar as the first alleged act of fraud is concerned, little discussion is necessary. Vincent Chiodo, because of his close connection with the Bear River Company for a period of many years was in a better position than any other person to know the true value or worth of that property. It is difficult for us to see how any outsider even if he is possessed with knowledge of the company and its assets could mislead Chiodo about the worth of the company. Any such statement by an outsider to Chiodo could not rise to the height of a false representation, it could be nothing more than an expression of opinion. In any event, Chiodo had the opportunity to have full knowledge of the true value of Bear River stock and was in the best of posi-

Deeds Fund, 10 Cir., 366 F.2d 140; Turner v. Brookshear, 10 Cir., 271 F.2d 761; Reid v. Reid, 10 Cir., 269 F.2d 923.

7. Vol. 3, Moore, F.P., 2907.

8. International Union v. Hoosier Cardinal Corporation, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192.

9. 78–12–26(3) Utah Code Annotated.

10. Horn v. Daniel, 10 Cir., 315 F.2d 471; Gibson v. Jensen, 48 Utah 244, 158 P. 426; Larsen v. Utah Loan and Trust Co., 23 Utah 449, 65 P. 208.

tions for more than three years prior to the bringing of this suit to ascertain whether any statements made to him by another about Bear River were false.

■ In July, 1961, at the Denver meeting Chiodo learned that General Waterworks was negotiating for the sale of the Bear River plant, and that, if the sale was made, he would be discharged as manager. Soon thereafter he began selling his stock in General Waterworks and on August 4, 1961, wrote a letter which plainly shows that he had knowledge of sufficient facts concerning the alleged acts of fraud to put him or any other person of ordinary intelligence and prudence on inquiry.[11]

■ Appellant argues that the legal question of the application of the statute of limitations is not properly before us on this appeal. We do not agree. General Waterworks, by answer and by appropriate motions for a directed verdict at the close of plaintiff's evidence and after all of the evidence was in, preserved this legal question. As a part of agreement between the court and counsel concerning submission of the case to the jury upon special interrogatories and the disposition of remaining factual and legal questions the court stated as follows:

"It is also agreed (and this may be implicit in the foregoing stipulation) the issue of the statute of limitations may be resolved by the Court following the return of the special interrogatories.

"While the parties generally feel that this involves solely or primarily an issue of law in view of the record, yet the parties understand and agree that the Court as fact finder may resolve any factual problems necessary to the resolution of the issue of the statute of limitations."

■ After the jury returned its answers to the interrogatories, appellee-defendant filed a motion for entry of judgment based on both the answers returned and the reserved issues of law. The court thereafter by "Judgment" specifically referred to the "motion for a directed verdict" and the answers to the interrogatories and proceeded to enter judgment in favor of the defendant and against the plaintiffs. From the wording of the judgment it is apparent that it was rendered on the basis of both the "motion for a directed verdict" and the answers to interrogatories. We consider the judgment as rendered, to have sustained General Waterworks' contention as to the statute of limitations and agree with that disposition.

Other arguments are made here that we have not discussed but our disposition of the case makes such additional discussion unnecessary.

Affirmed.

11. The letter in pertinent part is as follows:
"Mr. Sanders apparently has been in contact with A. T. & T. Company since the beginning of negotiations for his acquiring the common stock of Bear River Telephone Company from me on December 21, 1960.

"I want to assure you that this action comes as a complete surprise to me as well as our employees. All steps leading up to the acquisition were taken on the basis that General Waterworks would operate this property. I personally was assured that that would be the case. The price therefore was agreed at about a year's increase added to the surplus as of December 21.

"I am certain that Mr. Sanders entered into this agreement knowing that he was transferring the property to M. S. T. & T. Co. At the time he seemed very sincere in wanting to operate the property himself.

"It is clear that I have been used. * * *"