Argued at Pendleton October 31; reversed November 29, 1938

KAYLOR ET AL. *v.* RECLA ET UX.

(84 P. (2d) 495)

*Robert E. Lees,* of Ontario, for appellants.
*Robert D. Lytle,* of Vale, for respondents.

◼ BEAN, C. J. We therefore have for consideration the question of the sufficiency of the complaint to state a cause of suit. Of course on demurrer we must assume that the allegations of the complaint are true. The amended complaint, in substance, alleges that the plaintiffs, George W. Kaylor and A. S. King, are the equitable owners and in possession of certain lands described in the complaint; that said lands are adapted to the growing of alfalfa, cereal grains and other profit-

able agricultural crops, and have been continuously so used by plaintiffs for many years immediately preceding this suit, and are so used at this time; that the defendants, Louis Recla and Elvera Recla, are the owners and in the possession of certain lands described in the complaint, and that said lands adjoin the lands of plaintiffs on the south and are situated on an elevation approximately 65 feet higher than the lands of the plaintiffs, and that the lands of defendants have been planted to and are producing alfalfa; that in order to produce alfalfa it is necessary to, and defendants do, irrigate a portion of their lands and defendants did so irrigate in 1935 and 1936; that the soil through which said ditches of defendants are constructed consists of loose earth, sand, gravel and other porous materials, and is naturally incapable of holding or retaining water, and that said ditches were and are constructed without the employment of any means to prevent seepage and percolation; that the defendants have no proper or other drains or drainage from their lands, and that the waters used thereon for irrigation have no other outlet therefrom than by percolation, seepage and evaporation, and that defendants have wrongfully and negligently failed and refused to exercise reasonable or any efforts to prevent such seepage or percolation, and have wrongfully and negligently failed and refused to construct proper or any drains or drainage system, and have wrongfully and negligently permitted said irrigation waters to percolate and seep slowly through the subsurface strata of said lands and down and onto the aforesaid lands of plaintiffs, thereby injuriously saturating a portion of plaintiffs' lands, all of which defendants could easily have prevented by so constructing said ditches that they would retain said waters,

or by constructing a proper and sufficient drainage system; that the plaintiffs have at numerous and divers times protested to the defendants against their action in diverting water upon their land, and permitting the same to seep and percolate down and upon plaintiffs' lands, and have requested and importuned defendants to construct a drain ditch or drain ditches or some system of drainage to carry off the waste waters from their lands, thereby preventing the same from injuriously saturating the plaintiffs' lands, but that defendants have failed, neglected and refused to pay any attention to the protests of plaintiffs or comply or attempt to comply with their request, and have wrongfully and unlawfully, carelessly and negligently, permitted the waters used by them to percolate and seep onto the lands of plaintiffs and injuriously saturate the same; that the lands of defendants were never irrigated prior to the year 1935, but were irrigated in 1935 and 1936, and that such irrigation, coupled with the failure and refusal of defendants so to construct their ditches that they would retain water, or to provide drainage for their lands, has operated to discharge large quantities of water onto the lands of plaintiffs, causing said lands to become saturated and unfit for agricultural purposes; that at the time of filing this amended complaint, approximately four acres of land have been saturated and rendered unfit for agricultural purposes, and that said saturated area is continually growing larger and will, unless defendants are restrained from depositing said waters upon plaintiffs' lands, eventually saturate and make wholly worthless the whole of plaintiffs' land; that at comparatively little expense and labor the defendants can construct a drain ditch, ditches, or an underground drainage sys-

tem, and thereby drain their lands and carry off the waste waters therefrom, preventing the same from flowing onto the lands of plaintiffs and injuriously saturating them; that defendants threaten to and will, unless restrained by an order of the court, continue to irrigate their lands as aforesaid, and will refuse to reconstruct said ditches in such manner as to prevent seepage and percolation, and will refuse to construct a drain ditch, drain ditches or drainage system to carry off the waste water from their said lands, and that plaintiffs will be greatly and irreparably damaged thereby.

The question involved is not a new one. As we read the complaint the liability of an irrigator of his land, when he is not charged with any negligence in the matter, is not involved in this case upon the disposition of the demurrer. The complaint plainly alleges that the defendants were negligent and wrongfully and negligently failed and refused to construct any drains or drainage system and wrongfully and negligently permitted the irrigation waters to percolate and seep through the subsurface of their lands down and onto the lands of the plaintiffs, thereby injuriously saturating portions of plaintiffs' lands.

As we understand, it is the contention of defendants that unless they were negligent in applying the water to their lands by the use of too much water, or negligent in some way in the application of the water, they are not liable, irrespective of negligence or want of ordinary care in constructing their ditches or for failure to construct a proper and necessary toe or drainage ditch to carry off their waste water.

█ We believe it to be the rule in practically all of the courts that if a person, by artificial means, raises a

volume of water above its natural level, and, by percolation and by overflow, injures neighboring lands without license, prescription or grant from the proprietor, when the same can be prevented by reasonable and not too expensive means, the latter is liable for injury done to adjoining lands and may be restrained by a court of equity to prevent it when he would sustain irreparable injury or be compelled to bring a multiplicity of actions to recover the damages as they accrued. Such a rule, in substance, is applied in *Mallett v. Taylor*, 78 Or. 208 (152 P. 873), and in *Patterson v. Horsefly Irri. Dist.*, 157 Or. 1 (69 P. (2d) 282, 70 P. (2d) 36).

■ It is a matter of common knowledge that drainage goes hand in hand with irrigation and is a concomitant part of such operation.

We learn from *Howell v. Big Horn Basin Col. Co.*, 14 Wyo. 14 (81 P. 785, 1 L. R. A. (N. S.) 596), that the fact that injurious results of seepage from an irrigation ditch may be obviated by drainage may be shown as affecting the measure of damages. In *Parker v. Larsen*, 86 Cal. 236 (24 P. 989, 21 Am. St. Rep. 30), the syllabus reads: ''A land-owner who permits the water used in irrigating his fields to percolate through a ditch, and saturate his neighbor's land, is liable for the damages, and may be restrained from continuing the injury.''

■ In the present case the defendants failed and neglected to take proper or reasonable care to prevent the waste waters from seeping and percolating onto the lands of plaintiffs and we think this was negligence, as much so as if the application of water to the land had been made in a negligent manner. *Mallett v. Taylor*, supra; *Jenkins v. Hooper Irr. Co.*, 13 Utah 100 (44 P. 829) ; *McCarty v. Boise City Canal Co.*, 2 Idaho 245

(10 P. 623). This rule was applied in principle in the case of *Board of Regents v. Hutchinson*, 46 Or. 57, 59 (78 P. 1028), where it was held that the defendants had an undoubted right to an easement over and across the lands of the plaintiff for their ditch and water right, but that this easement must be used by them in such a manner as to impose as little damage to the servient estate as possible. The court said:

"They cannot negligently or carelessly permit the ditch to fill up and obstruct the flow of water so as to cause it to flow back and injure the plaintiffs, nor can they enlarge their ditch or increase the flow of water therein to the plaintiff's damage, or in any manner so operate or use their ditch and water right as to render it a nuisance, or unnecessarily damage the servient estate."

■ In other words, we understand the question of reasonableness is applied in cases of this kind. This is borne out by the language in 2 Restatement of the Law of Torts, 1287, § 497, cited by the defendants, where we find:

"While the rules are the same, the fact that the actor's conduct involves a risk of harm to the physical condition of land or chattels rather than bodily harm is often of importance in the application of these rules. In order that the actor's conduct may be negligent, the risk which he should realize as involved therein must be unreasonable, see § 282. In determining the unreasonable character of a realizable risk the value which the law attaches to the interest imperilled is an important factor (see § 293). Thus, the actor's conduct may have a sufficient social utility to justify the creation of a certain quantum of risk to the physical condition of land or chattels although conduct involving a similar risk of bodily harm, particularly bodily harm of a serious character would be unreasonable."

In directing and regulating the irrigation of semi-arid land in the state of Oregon, a reasonable rule should be enforced and the policy of "live and let live" should be applied. It would hardly seem reasonable to permit the defendants, in reclaiming their own land, to injure and destroy an equal number of acres of adjoining land that is also irrigated. It may be that the public policy is to encourage irrigation so that two blades of grass will grow where only one grew before, but it hardly seems reasonable to suppose the owner of land can make grass grow on his own land and at the same time destroy an equal amount of grass upon his adjoining neighbor's land.

■ Defendants' act of constructing their ditches through soil naturally incapable of retaining water, without the employment of any means to prevent seepage or percolation, constitutes negligence: *Howell v. Big Horn Basin Col. Co.*, supra; *Kall v. Carruthers,* 59 Cal. App. 555 (211 P. 43) ; *Turpen v. Turlock Irr. Dist.*, 141 Cal. 1 (74 P. 295) ; *Tormey v. Anderson-Cottonwood Irr. Dist.*, 53 Cal. App. 559 (200 P. 814). In *Mallett v. Taylor*, supra, Mr. Justice McBride, at page 212 of the report, records the following language:

"In the instant case there is no need to invoke in all its severity the rule laid down in Esson v. Wattier, 25 Or. 7 (34 Pac. 756). The evidence tends to show that defendant provided no waste ditch, the construction of which would have prevented further injury, and, although plaintiff offered to provide a right of way at his own expense for such ditch, these reasonable proffers were rejected by defendant. The failure to provide this ditch was negligence which was the proximate cause of the injury, and all the authorities concur in holding a ditch owner or irrigator responsible in such a case." (Citing many authorities).

In *Jenkins v. Hooper Irr. Co.*, supra, cited in the Mallet case, the court said:

"If alkali water collected in defendants' canal, and seeped into and upon plaintiff's land, and the defendants knew, or should have known it, in the use of reasonable diligence, and could have prevented it in the use of reasonable means, but did not, they were guilty of negligence. If defendants knew, or could have known in the use of reasonable diligence, that alkali water from their canal was injuring plaintiff's land, it was their duty to use all reasonable means to prevent it; and they should have used all such means, though it included the lowering of their head gate, and deepening their canal, whether in the spring or fall, or at any other time."

In *Tormey v. Anderson-Cottonwood Irr. Dist.*, supra, the court said:

"To knowingly construct a canal through loose sand or gravel incapable of holding water, in a situation such as that disclosed here, without taking any steps to prevent or control seepage therefrom, would constitute negligence. Turpen v. Turlock Irr. Dist. 141 Cal. 1, 74 Pac. 295; Shields v. Orr Extension Ditch Co. 23 Nev. 349, 47 Pac. 195."

In *Kall v. Carruthers*, supra, it was said:

"No essential difference is usually recognized between damages caused from surface overflow and damages caused by direct percolation, reasonably traceable, whether the construction was apparently reasonably sound originally, or apparently originally imperfect. Whether the seeping nature of the soil is known or unknown at the time of construction, the responsibility is usually held to be the same; it must be remedied by effectual intercepting trenches, by cementing, or by other means known to science. In other words, the artificial receptacle for holding the liquid, be it of whatever form or nature, must be made and maintained as nearly waterproof as human agency can reasonably

and prudently make it. Otherwise, if the escaping water results injuriously by reason of the receptacle failing to properly hold the water, it then falls within the category of nuisances, or under the condemnation of negligence.''

The closing words of this opinion are as follows:

''We are of the opinion that to permit the defendant to make his lands profitable though it result in the utter destruction of the usefulness of plaintiff's lands, would violate every principle of natural right and justice, and cannot be supported by judicial authority.'' See *Stephenson v. Pioneer Irr. Dist.*, 49 Idaho 189 (288 P. 421, 60 A. L. R. 1225), and annot. p. 1232; *Jensen v. Davis & Weber Counties Canal Co.*, 44 Utah 10 (137 P. 635); *Lisonbee v. Monroe Irr. Co.*, 18 Utah 343 (54 P. 1009); *Taylor v. Farmers' Irr. Co.*, 82 Or. 701 (162 P. 973).

We read in 3 Kinney on Irrigation (2d Ed.) 3088, § 1675:

''The seepage of water from ditches, canals, or other works, is but one method of its escape from such works. Therefore, the same duty devolves upon the owner of such works to so construct them as far as possible so that the water will not seep or percolate therefrom to the injury of the lands of others below. * * * *''

As we read the authorities cited by defendants they do not sustain the contention made by the defense: *Fleming v. Lockwood*, 36 Mont. 384 (92 P. 962, 14 L. R. A. (N. S.) 628, 122 Am. St. Rep. 375, 13 Ann. Cas. 263), cited by defendants, is a case where damage was claimed for water seeping onto the land of plaintiff. Negligence was alleged, but none was proved. A strong defense seems to be made that no injury was caused by the defendant. A general verdict was rendered in favor of defendant and a judgment thereon was affirmed.

■ It is a general rule that the owner of an irrigation ditch is bound to exercise reasonable care and skill to prevent the ditch from causing injury to others. Consequently he is liable for all damages sustained by others as a result of his negligence or unskillfulnss in constructing, maintaining, or operating the ditch. See note to *Fleming v. Lockwood,* supra, found in 13 Am. & Eng. Annot. Cas. 267.

In the present case the injury to plaintiffs' lands, disclosed by the complaint, was not caused by the act of God or any accident such as on account of gopher or mole holes through the bank of the ditch.

■■ It is the duty of defendants, in the construction and maintenance of their ditches, to use ordinary care and reasonable caution in order to avoid injuring their neighbor's land and not to negligently allow the seepage and waste water to escape onto the plaintiffs' premises.

The demurrer to the complaint should be overruled. The decree of the circuit court is therefore reversed and the cause remanded for such further proceedings as may be deemed necessary, not inconsistent herewith.

KELLY and ROSSMAN, JJ., not sitting.