KNIGHT et al. v. UTAH POWER & LIGHT CO. et al.

No. 7161.   Decided August 22, 1949.   (209 P. 2d 221.)

See 67 C. J., Waters, sec. 1095. Water, liability of owner for negligent keeping of, see note, 109 A. L. R. 413. See, also, 38 Am. Jur. 799.

*Charles L. Ovard*, Salt Lake City, *Howell, Stine & Olmstead*, Ogden, *David K. Holther*, Ogden, for appellants.

*Thatcher and Thatcher*, Ogden, for respondent.

LATIMER, Justice.

On the 28th day of February, 1946, plaintiffs' home in Ogden Canyon was damaged by a large volume of water which flowed across their property and through their house. Their furniture, fixtures and clothing were damaged by the water and large quantities of mud and silt were deposited on the floors of their home. The water had escaped from a seventy five foot wood stave pipe line used by the defendants to divert water from Pineview Dam for power and irrigation purposes. In the action commenced in the court below, the matter was tried before a jury which found in favor of plaintiffs and from the judgment entered upon

its verdict, defendants have appealed. We shall refer to the parties as they were designated in the trial court and the testimony will be viewed in a light favorable to respondents.

In 1935 pursuant to a contract between defendants and the United States of America a seventy five foot wood stave pipe line was constructed to carry water down Ogden Canyon. The conduit was installed on a right of way owned by defendant, Utah Power and Light Company, and for all practical purposes was to be aligned, graded and buried substantially the same as a line which was being replaced. The plans and specifications for the installation were subject to the approval of the Power Company and the work was to be done to its satisfaction. Since its installation the line has been used and maintained by the defendants jointly.

On the night in question, the pipe was broken in two places. The larger of the two breaks was on the west and the smaller on the east. From the position of the rocks after the break, it appears that the damage on the west was caused by a boulder estimated to weigh nine tons while that done on the east by one or two rocks of approximately two by two by three feet in size. Both breaks were of sufficient size to permit a large volume of water to escape according to witnesses who estimated the hole on the east to be four feet by two feet in size. The pipe had been covered with some dirt at the point where it was damaged on the west but was uncovered at the other place of damage.

The conduit had a carrying capacity of 320 cubic feet per second and at the time of the break the flow was about one half this volume. The line ran in an easterly-westerly direction down the canyon and, in the vicinity of the breaks, was at a higher elevation than the highway and homes built and occupied by people living in that area. There was a river bed in the bottom of the canyon which would canalize the water once it reached that level, but plaintiffs' home was between the conduit and the stream bed.

Winter snow had fallen and the state highway department in clearing the main travelled portion of the highway had banked the snow on the shoulders of the road. These snow banks confined the water that had escaped through the breaks and as it coursed down the canyon. Apparently the first point at which the water could escape from the highway was in close proximity to plaintiffs' house and as a result, the course of the water after leaving the road bed was through the plaintiffs' home.

There are rocky cliffs about one half mile north of the places where the pipe was broken. They are steep, rugged and nearly perpendicular at that distance. While the intervening territory is not nearly so steep, the slope continues to the south and once a boulder starts rolling there is little to stop or retard its speed until it reaches either the highway or the river bed.

Before concentrating on detail it may be well to place the principle issue in a large perspective. This issue affects the question of determining what is due care in the construction of a conduit designed to confine a large volume of water under the conditions as they exist at the time of construction. If the jury could find from the evidence that at that time a person could have reasonably anticipated that damage from rolling rocks would occur in the vicinity of the breaks, then defendants could be charged with lack of due care. If, however, the occurrence was so unusual or so unforeseeable that a person could not reasonably anticipate the damage which was done, then the issue should not have been submitted to the jury.

The appellant has by appropriate assignment of error challenged the court's orders in overruling the demurrer and in denying defendants' motion for non-suit and directed verdict. Moreover, error in refusing to submit requested instructions and in giving inappropriate instructions has also been assigned. We believe the first group of assignments of error can be disposed of by determining whether the evidence is sufficient to sustain the verdict.

Before treating this question, we dispose of defendants' contention that the damage done by the large rock was brought about by such a sequence of unusual events and circumstances that careful construction would not have protected the line. The term "construction" as herein used means more than one design and fabrication of the conduit —it includes as well the precaution taken to shield it from anticipated damage. It might be that if this were the only break we could say as a matter of law that defendants were not negligent and that the large rock bounding down the hill and striking the pipe as it did was, in effect, a vis major. However, the evidence was such that the jury could have reasonably found that the water escaping through the smaller break did the damage. Taking this view of the evidence we need not concern ourselves with discussing the defendants' duty to protect against damages from a major catastrophe.

The evidence concerning the courses taken and the damage done by the smaller rocks did not establish an unusual occurrence in the sense that the angle of fall was unexpected, that the weights of the rocks were excessive, or that reasonable protective measures had failed in their purpose. The damage to the pipe was on the side near the cliff. There was no evidence that the rocks came bounding down the hill in large or excessive bounds and there is no reason apparent from the record that would lead us to believe that had the line been covered at that place where the conduit was broken, the rocks would not have rolled over it without damage. Therefore, if the defendants could be charged with reasonably anticipating that rocks rolling in that immediate vicinity might damage their pipe line and permit water to escape which would cause injury to property owners below, the jury could find them negligent in failing to bury the conduit.

There is evidence in the record from which the jury could conclude not only that defendants could have reasonably anticipated that rocks would damage the pipe line but also that defendants were charged with knowl-

edge that this was an area in which rocks periodic-
ally rolled down the mountainside. For more than
thirty five years, rocks have rolled from ledges in the vicin-
ity of the breaks onto the highway below. Every spring,
according to the witnesses, rocks varying in size from some
approximately the size of the human hand to boulders weigh-
ing many tons have rolled down in that vicinity. While it
is true that they have not always rolled down in the same
spot, witnesses always fixed the places at which rocks had
rolled down as being in the vicinity of the breaks. More-
over, previous conduits that had been located along the
same or nearly the same contour line had twice been broken
in practically the same spot. Some 25 years earlier, the pipe
line of the Power Company which had been replaced by the
present installation was broken, and from other evidence,
the jury could have reasonably found that the present line
had been broken on one prior occasion some two years be-
fore the present breaks occurred. The city conduit, which
was a much smaller line, had been broken in the same spot
some 17 years before and in that general vicinity many
times. As a matter of fact, because of its past experience,
the city buried its line across this area to protect it.

We do not pause to detail all the evidence given by all
witnesses for the reason that in viewing the record as a
whole we are convinced there is evidence from which the
jury could reasonably conclude that the defendants could
anticipate damage to its line by rolling rocks in that im-
mediate vicinity.

Appellants argue that the principles of law announced in
the case of *Logan, Hyde Park & Smithfield Canal Company*
v. *Utah Power and Light Company,* 45 Utah 491, 146 P.
560, 561, support their contention that they could not reason-
ably foresee the damage that occured. Our inquiry in this
connection is whether there is a difference in the facts con-
cerning the reasonableness of anticipating damage to the
line. In that case the Power Company constructed a wooden
flume along a mountain side. Above the canal were many

rocks and boulders. The rock or rocks doing the damage in that case were started rolling by a third person and in the 12 years time the flume had been installed it had not been injured by rolling rocks. Mr. Justice Frick writing for this Court announces reasonable foreseeability as the test. In the decision he states:

"It seems to us this contention is sound. True, plaintiff's counsel contend that, in view that there were many large boulders and loose rocks along the steep incline on the mountain side above the flume, it was the defendant's duty to guard against injury to its flume from any of the rocks that might become dislodged and roll down the mountain side. According to plaintiff's own evidence, however, such a danger or contingency was quite remote. The evidence is conclusive that the wooden flume was in operation for at least 12 years before the rock in question struck and injured it. Is it negligence not to foresee and guard against the consequences of an occurrence of the character in question here, which happens only once in 12 years, and may not occur again or is it any evidence of negligence? If such be the law, then the only method by which the defendant can make itself immune against suits for damages caused by rocks that may roll down the mountain side and which case injury to its flume, and may thus result in causing the water flowing therein to cause damages, is to remove all the rocks that are along the mountain side above the flume, or build the flume into the mountain side and cover it over so that no rocks could possibly injure it. The latter is what plaintiff's counsel suggests defendant should have done. To require that seems quite unreasonable."

There was no evidence in that case of any prior damage to the flume and the general rule is that one need not anticipate that strangers will put forces in action to injure or destroy property. But the rule does not go so far as to say that when, over a period of years, rocks have rolled down the mountain side and have damaged pipe lines in the same locality, that one may not then be charged with knowledge that its pipe line which is installed above the surface might be damaged by the rocks that are periodically broken from ledges above by the elements. Under the facts of that case the court held that as a matter of law the defendant was not negligent in not foreseeing the damage to be guarded against. Here, however, there was evidence

upon which a contrary finding might be based. We hold that under the facts present, all reasonable men need not conclude that damages, such as were done to the pipe line in this instance, could not be reasonably forseen. Thus the determination of due care on the part of the defendants in this case was properly submitted to the jury.

Defendants urge that they were not negligent because the engineer in charge of construction testified that the pipe line was constructed in accordance wth specifications, which was prepared in accordance with the best engineering practice. It may be that in certain cases involving technical skills that the judgment of the experts might be controlling. But, if so, this is not such a case. The judgment of the technician can be questioned by the visible evidence on the ground. Any person travelling regularly through Ogden Canyon would see those places where rocks rolled on the highway. If the presence of rocks or boulders on the highway was frequent and in the same locality and their course passed over defendants' line, the jury would then have evidence that would tend to contradict the testimony of the engineer that the pipe line was installed in accordance with the best engineering practice. It seems unnecessary to argue that proper engineering standards require a pipe line to be buried if it can be reasonably anticipated that rolling rocks will damage the pipe line and release water to damage property located at lower levels. Moreover, plaintiffs need not produce experts to contradict appellants' evidence if competent refuting evidence is obtainable from lay witnesses.

In connection with defendants' negligence it must be remembered that one who, by means of a conduit, controls water, is required to exercise such reasonable care and caution in the construction and operation of the line as would a reasonably careful and prudent man who is acquainted with the size and fall of the conduit; the physical characteristics and features of the surrounding terrain; the proximity of homes; the effect on

the pipe line of snow, rainfall and other climatic conditions; the probability of rocks breaking off and rolling down the country side; and the damage that might result if water does escape.

This court, in the case of *Mackay* v. *Breeze, et al.,* 72 Utah 305, 269 P. 1026, 1027, states the rule in this jurisdiction to be as follows:

"* * * One who constructs a ditch or canal and conveys irrigation water through the same must use ordinary care in the construction, maintenance, and operation of such ditch or canal. The degree of care required to prevent the escape of water is commensurate with the damage or injury that will probably result if the water does escape. Such is the rule of law repeatedly announced in this jurisdiction and generally established in America and England when applied to ditches and canals. * * *"

What might be ordinary care in constructing a pipe line through flat, open and unpopulated areas might be gross negligence if the same standards of construction were used to install one along a rocky mountain side where rocks were known to roll with a rapid fall and where the slope of the land was toward residential areas. It is in the latter surroundings that we cast the facts of this case and it was for the jury to say whether the construction met the tests of reasonable care.

Defendants have attacked the correctness of six instructions given by the trial court. The only assignment of error dealing with the instructions which we believe merits discussion is the one which charges that the judge committed error when he, in instruction number seven, withdrew from the jury the alleged negligence of defendants in improperly maintaining the pipe line and yet referred to this ground of negligence in other instructions. If the following phrases used by the court

"the law requires the defendants so doing to use ordinary judgment, skill, care and caution in the construction of that pipe line and in the use of the pipe line for the coursing of water"

and

"the defendants were under a duty to use the same care which an ordinary prudent man would use in the construction and operation of the pipe line;"

are isolated and torn from context, they might be interpreted as contended for by appellants. However, negligent maintenance encompasses different elements than either negligent use or negligent operation, and the court in using the latter terms was not referring to the physical condition of the installation but rather to coursing a large volume of water through the pipe while there was danger from breakage. Regardless of the manner in which the conduit was installed there could have been no damage done to plaintiff had not defendants been using the water course at the time of the break. When the instructions are considered together they do not incorrectly state the law or become confusing.

We find no error in the court's refusal to submit to the jury defendants' requested instructions one, nine and fourteen. Number one was a request for a directed verdict and this contention has already been disposed of. Number nine was a request to the effect that if the jury found the rock which caused the break was part of a cliff which was approximately one half to one mile distant from the pipe line the jury must return a verdict for defendant. Our previous discussion disposes of this contention.

Instruction number fourteen sought to shift the blame from these defendants because of the presence of snowbanks along the shoulders of the highway. While these banks may have contributed to canalizing the water down the highway, they were not a new or independent ■ cause which would relieve defendants of the duty to exercise ordinary care. It is most difficult to assume that the acts of the state agents in clearing the road of snow was negligence but even were we so to do the assumed negligence would only be a concurring cause of the damage.

The judgment is affirmed. Costs to respondents.

WADE, WOLFE, and McDONOUGH, JJ., concur.

PRATT, Chief Justice (dissenting).

As indicated in the prevailing opinion, the principal question raised is one as to whether or not defendants were negligent in the construction of the pipe line.

. One of the principal faults I have to find with the prevailing opinion is that it uses the words "area," "vicinity" and "locality" as including too much territory— more than either the layman or the expert would consider in making an estimation of the rock sliding dangers surrounding the pipe in the two places where it was broken. For that reason, I shall discuss the facts as I proceed. Except for the initial drop of the cliff one-half mile north of the pipe line, the slope down to the pipe line is gradual though fairly steep and is covered with brush.

There were two breaks in the pipe line. One was the result of a huge rock bounding in 68 pace leaps, landing on the south half of the top of the pipe at the end of one of those leaps, and mashing it. In bouncing it cleared a twenty or thirty foot cliff at the immediate base of which there was a cut along which the pipe lay. Had this rock not bound, but rolled, it might have shot clear of the pipe from off the top of this lower cliff by reason of the force of its rolling. The other break was some 200 feet away, east from the first, and was caused by two smaller rocks rolling against the pipe line and knocking a hole some 2x3 feet in size therein. In this latter locality the pipe was exposed. This hole was on the upper (north) side of the pipe. At the point of the larger break the pipe had a covering of dirt of some 6 inches to 2½ feet deep, depending upon which testimony is taken to be true; but obviously in either case insufficient to protect it against a boulder of such large dimensions—probably weighing some 9 tons. This boulder was approximately 5x8 feet.

There is evidence in the record that some two years previously this pipe line had been broken by rocks, but not

in these particular spots. Nothing in the record evidences a locality where breaks were obviously a likelihood from rock slides. It is not a recognized rock slide area.

To state a rule of law that will measure with any degree of accuracy the anticipatory character of acts of nature so that they may be brought within the realm of human control as to their results is, to say the least, a task resulting in extremely broad generalizations. This case is a good example. One might anticipate a yearly breaking off of rocks from the cliff north of the pipeline, but how large rocks should be anticipated? We have two general sizes presented here—one weighing tons, two weighing approximately one thousand pounds each. Are the rules of law applicable to each, different? The parties litigant seem to feel a difference. The plaintiffs stress the damage done by the smaller rocks where the pipe was exposed. They advance the theory that this damage came first and caused the flood. The defendants stress the large rock, and question whether the injury by the smaller rocks led to any loss of water sufficient to cause the results. The court in his instructions made no such distinction. Why such a difference between the parties? It seems fair to say they both recognize that the size and weight of the big rock was such that it would have taken rather extraordinary effort upon the part of those constructing the pipeline to avoid injury from it, therefore, they, who seek recovery, do not feel certain that such extraordinary effort can be classed with the degree of care required for the construction of a pipeline in such a locality; and they who seek to avoid liability are sure it cannot. As to the smaller rocks, the anticipatory character of their falling seems to have impressed the parties relatively the same, but from opposite points of view. The defendants being uncertain as to whether or not the anticipatory character of these rocks could be included in the duty of care required of them in constructing the pipeline, stress the fact that the damage did not result from this break, their witnesses indicating that the flow of water

from this part of the pipe was almost nothing and was to the north of the pipe. The plaintiffs on the other hand emphasized this break as the real cause of the injury.

What care was exercised in the construction of this pipe-line? It was constructed by a construction company under the supervision of a United States Government Engineer, pursuant to a Government contract (U. S. Govt. form PWA 51) in the specification (specification No. 622) and plans of which a back fill of not less than 2 feet 6 inches was required for pipe protection against falling rocks in such localities as *in the opinion of the contracting officer* (the engineer or his representative) there was danger of such damage. The pipe was covered by fill where it was hit by the big rock and had no covering where it was hit by the smaller rocks. The engineer in charge testified that it was constructed according to accepted practice for such construction, taking into consideration that if the pipe were entirely buried, the cost would be prohibitive. This particular area he considered one of the least dangerous areas. The pictures of the area introduced in evidence, do not show a dangerous appearing area, unless we assume that all areas, over-shadowed by cliffs are dangerous areas. If this assumption is made, then it becomes almost a foregone conclusion that the only safe way of laying a pipe in a rocky canyon such as this, is complete burial.

We should not, of course, say: Well, the pipe was hit and broken, therefore it must have been negligence not to cover it more where the big rock hit it, and cover it some where the smaller rocks hit it. Negligence must not be assumed from the injury. If there is an inference of negligence, the evidence should disclose a factual background to support that inference. The evidence should show that when the engineer arrived at the area in the process of survey and construction there was presented to him a physiographical picture which viewed in the light of such evidence of its history as was available to him, warned him or should have warned him that a greater fill was required, than was placed,

where the large rock hit, or some fill was required where none was placed, at the point of contact by the smaller rocks. Then, if he failed to abide the warning, negligence is a reasonable conclusion. Absent such a picture, the injuries should be classed as fortuitous circumstances. The defendants are not insurers against injury by the elements, and in the *Logan, Hyde Park & Smithfield Canal Co.* v. *Utah Power & Light Co.*, 45 Utah 491, 146 P. 560, we held that such a pipeline was not required to be entirely underground. It is not, in other words, in such a potentially dangerous position that there was only one safeguard against injury to it, and that complete burial.

The building of pipelines along rugged mountain sides is not so common that the layman can express a very accurate opinion of what is reasonable care in such construction. His view point is very apt to be governed by possibilities rather than probabilities, and he is apt to take the idealistic safeguard—complete burial of the entire line—as the requirement. The proper measure is the opinion of the expert. As between conflicting experts the jury has the final determination. If one side only is supported by expert testimony, then the error therein, if error there be, must be found by comparing the factual background for his opinion, with that opinion to see if they bear a proper relationship of premises and conclusion. The jury, of course, makes this comparison, and their determination is final, but it requires a state of the testimony inconsistent with the expert's opinion to delineate the issue for the jury to decide. This we do not have here. From the facts testified to, and shown by the pictures introduced in evidence, there is no evidence—other than the break—that shows an inconsistency between the opinion of the engineer and the facts upon which he founds his opinion. As stated above, we can't reason backward and say that, as the accident happened, the engineer's opinion must have been wrong. If the jury were of the opinion that the item of cost was over-emphasized in the mind of the engineer and led to an opinion of a safe construction which was in

reality not safe, they had the right to reject his opinion as to the method adopted being the reasonable one under the circumstances. However, to arrive at this conclusion there should be evidence presented to them probative of the fact that cost was over-emphasized, and that, in reality, safe construction could have been accomplished without prohibitive cost. The record is silent as to this. It cannot be said that the opinion as to safe construction was obviously unreasonable. It is not controverted by expert opinions.

The evidence in this case discloses that the capacity of the pipeline was some 320 cubic feet per second. There is no question about the potential danger of the confinement of such a water force upon a mountain side where gravity governs its movement. If allowed to escape, the resulting flood is going to be dangerous. These facts of course, impose a greater burden upon the defendants in the construction of the line to protect the surrounding property from damage from such an escape, than if the stream of water were such, that, if released, little or no harm would result to neighbors. If, for instance, the pipe should break as a result of the water pressure, defendants might have considerable difficulty in explaining why such a break was purely accidental. We have, here, however a break incident to extraneous matters which are not under the control of human hands,—a break caused by the erosive acts of nature. The serious question that arises under such circumstances is that of the anticipatory character of the cause of the break. If the disintegration of the earth's surface is such that half a cliff breaks loose from its moorings, is that an event which man should anticipate, and guard against? If so, how much earth covering over a pipeline is necessary to protect the line against such an event? If, as most of us would probably agree, it is an unusual event, then does it become any the less unusual because the detached piece of cliff breaks into smaller pieces, one or two of which, not being of extraordinary size, find an unprotected part of the pipe and break it? By posing these questions, I do not wish to imply that it was a half of a cliff in this case that

broke loose, although it was of a rather large size. I simply wish to emphasize the speculative character of evidence such as has been submitted in this case. It seems rather obvious that the size of this larger boulder is such that had the duty been imposed upon defendants to back-fill the pipe at the base of the lower cliff, an amount of fill far in excess of anything anyone anticipated would have been necessary to protect against an almost perpendicular fall of rock of several tons in weight, backed up by the force of the momentum of a half mile roll and an aerial bounce of some 68 paces.

I do not think that plaintiffs have shown sufficient facts to entitle them to recover upon any theory of the anticipatory character of the fall of the rock of several tons. There is no previous history of such injuries.

Are they in any better position as to the smaller rocks and break? These came down in an area which from the pictures, and from the expert testimony appears to be a comparatively safe area, a brush area. If they were thrown off from the larger boulder in its bouncing, and cracking off pieces, they could very reasonably be considered unusual. Whether or not thrown off from the large boulder, if they came down in a recognized rock slide area, they would be a legitimate foundation for granting plaintiffs' relief, as the pipe in that area was unprotected. If, however, it was not a recognized rock slide area then the question is whether or not there was any evidence of this point being sufficiently dangerous from falling rocks to require defendants to cover the pipe with fill.

What is the evidence on this point? The pipe line of the Power Company that precedes the present line was broken at this spot some 25 years before; how is somewhat uncertain. Over a period of 35 years rocks of many sizes have rolled down the sides of the mountain, but whether this particular locality was obviously vulnerable to them does not appear. There is some testimony in the case that might, at first blush, indicate that the particular pipeline in con-

troversy had been broken at this point some two years before by rolling rocks. However, as this case was heard November, 1947, and the break took place in February, 1946, it developed that the witness was discussing the break in controversy here, and not another break. The city water pipe, a much smaller pipe, had been broken many times, not however, in this locality except as hereinafter indicated, and resulted in it being placed underground. It was broken in this locality some 17 to 18 years before the present event.

The sum total of this evidence is that the sides of the canyon during spring are generally subject to rock rolling. This, of course, is a fact that most people would conclude who have only a little knowledge of canyons like Ogden Canyon. As to the particular point in controversy, however, there are only the two instances of some 25 years before and some 18 years before. I do not think that such evidence of rock rolling in this vicinity is sufficiently definite to found any anticipatory rule upon, other than that which can be said of any canyon slope simply because it is such a slope.

The lower court should have directed a verdict of no cause of action.

I note some ambiguities in the instructions in this case. Instruction number 7 specifically withdraws from the jury the issue of negligence in the maintenance of the pipeline, upon the ground that there was no evidence submitted on that issue, but instructions numbers 9 and 10 discuss the care required in the "using" of the pipeline, and define that care in terms of the care required in "operating" the line. The expressions "using" and "operating" are used in conjunction with "constructing" or "construction." I believe they, in effect, re-submit the issue withdrawn by instruction number 7. Counsel for plaintiffs seem to think that they were entitled to the inclusion of those words in the instructions and that instruction number 7 was erroneous; but they have not attacked instruction number 7, so we

should take it as proper. If, then, the issue of negligent operation or use of the pipeline was submitted to the jury, it was submitted without evidence to support it. This is reversible error.