## TACEA TSOURAS v. BRIGHTON AND NORTH POINT IRRIGATION CO.

No. 7454. Decided February 5, 1951. (227 P. 2d 329.)

See 67 C. J., Waters and Water Courses, sec. 1112. Liability for injury by seepage of waters, see note 160 A. L. R. 1171. See also, 30 Am. Jur. 657.

*F. Robert Bayle, George V. Russell,* Salt Lake City, for appellant.

*J. R. Mulliner,* Salt Lake City, for respondent.

LATIMER, Justice.

This is an appeal by defendant from judgment for damages to plaintiff's crops caused by the overflowing of defendant's canal in 1948, and by seepage from the canal in 1949. The parties are referred to herein as they appeared in the court below.

"Plaintiff is the owner of certain real property situated between Redwood Road and the Jordan River in Salt Lake County, Utah, which has been used for farming purposes. The defendant, a corporation, owns and operates the Brighton and North Point Canal that crosses over the real property owned by plaintiff and runs in a northerly direction parallel to and west of the Jordan River. Plaintiff's farm slopes slightly in an easterly direction from the canal toward the river. In order to assist in following this decision, a sketch, not drawn to scale, is set forth:

Defendant's canal enters plaintiff's property at point A and leaves the property at point B. For the purposes of this case, plaintiff's land is divided into five sections, which are referred to and designated numerically. In 1948 the areas were planted with onions, grain and lucerne, and in 1949 similar crops were anticipated. The trial court made no award for damages for loss of or damage to crops in area #5, so we are concerned only with areas # 1, #2, #3, and #4.

All of defendant's points on this appeal can be summed up in its contention that the findings of the trial court on negligence, mitigation of damages and damages are unsupported by the evidence, and therefore, the judgment must be reversed. This being a legal action, under the oft-repeated holdings of this court the findings of the trial judge will not be disturbed if there is any evidence of a substantial character to support them.

It is not claimed that the testimony on behalf of plaintiff is so inherently improbable as to be unworthy of belief. We, therefore, review briefly some of the evidence which we consider sustains the trial court's findings of the negligence of defendant in maintaining its canal in 1948; negligence of the defendant in causing seeping during 1949; mitigation of damages by plaintiff; and damages. While some of the narrated facts, particularly with reference to seepage, were disputed by witnesses for the defendant, the trial judge resolved the dispute in plaintiff's favor. Accordingly, we relate the evidence favorable to her.

The testimony of the witnesses and the photographs of the property and canal permit the following findings: That in 1948 the defendant knowingly permitted bulrushes, vege-

tation and debris to grow and collect in the channel, which interfered with the free flow of water; that the banks of the canal were not built up and maintained in reasonably good condition; that there were heavy rains during May and June of 1948 which caused the Jordan River to overflow and forced large quantities of water through the canal, but these unusual weather conditions were for a short period of time and the flow of water could have been better controlled; that during the summer of 1948 because of the interference with free flow of the water and the quantity turned into the canal the water overflowed onto plaintiff's property, from point A to point B on the sketch, almost constantly from June until September; that during 1948 officers and employees of the defendant were notified a number of times that the water was overflowing the banks of the canal onto plaintiff's property; that on some of these occasions the flow of water in the canal was cut down by the defendant, thus stopping the overflow, but on other occasions the complaints were ignored and large quantities of water were permitted to run into the ditch and onto plaintiff's property; that all during the summer and as late as August of 1948 there was a pond of standing water in area #4; that the other areas were continuously soggy and damp from the overflow; and that when the channel was cleaned and the banks built up the flooding ceased.

As to the matter of defendant's negligence in causing seeping of water from the canal in 1949, the record reflects the following evidence:  That prior to the cleaning and dredging of the canal by the defendant in the fall of 1948 or in the spring of 1949 there had been no seepage onto the lands of plaintiff; that good crops were produced in the previous years; that there was no overflowing of the banks during the 1949 period; that when the canal was originally constructed and before any water was

diverted into its channel the banks and bottom had been sealed; that ordinary standards require the sealing of a channel if the water is coursed through porous soil; that the clay sealer had been removed from the bed of the canal by the dredging and deposited on the banks; that the removal permitted water to seep through the porous soil and onto plaintiff's property; that after the water was turned out of the canal in the fall of 1948 the land dried out and it was worked and planted that fall and in the spring of 1949; that shortly after the water was turned back in during the spring of 1949 the land became so wet the crops quit growing; that during 1949 the land in areas #1, #2, #3 and #4 was continuously soggy and much of it too wet to be cultivated, although plaintiff attempted to raise onions and wheat on portions of the land; that plaintiff was unable to take a tractor onto some of the areas to plow because the ground was too wet and soft; that during the summer there was water standing between the rows of onions which plaintiff was attempting to raise; that the surface of the soil was dry, but after scraping off a few inches of top soil the underneath soil was damp enough to be rolled into a ball; and that there was an increased alkali condition in the areas close to the canal from where the seepage was claimed to be coming.

In relation to the findings of plaintiff's efforts to mitigate her damages, the evidence shows: That the irrigation and drainage ditches maintained by plaintiff on her property were cleaned in the spring of 1948; that she had attempted to divert the flooding water into these irrigation and drainage ditches, but the volume was so great that the ditches would not carry it; that the headgates on the canal were properly maintained by plaintiff and that the overflowing was not caused by either the maintenance or operation of these headgates; that several times

when the overflow reached such proportions that plaintiff's efforts could not protect the crops, defendant was promptly notified of the condition and was requested to assist her in controlling the flow of water.

We believe the evidence set forth above sustains the trial court's findings on the questioned issues and that defendant's contention that there is no evidence must be overruled.

We do not deem it necessary to set forth all of the evidence on the elements of damages. The testimony covers many pages of the transcript and the trial court made detailed findings as to the loss suffered on each parcel of property for each year. Witnesses testified as to a reasonable yield, the market value of the crops and the costs of production where applicable. Defendant's principal complaint goes to the contention that the court did not take into consideration the cost of producing the crops. There is evidence on this item and it was considered by the trial court in those instances where material. Defendant apparently overlooks the evidence which shows that, for the most part, the labor involved in planting, irrigating, harvesting and marketing the crops was performed by members of plaintiff's family on a voluntary basis and at no cost to her and that she was entitled to a free water right. No deductions were taken for these items but where proper the costs were evaluated by the trial judge and necessary adjustments were made. His findings and conclusions are well within the limits of the testimony found in the record.

The judgment is affirmed, costs to respondent.

WOLFE, C. J., and WADE, McDONOUGH, JJ., concur.

CROCKETT, J., not participating.