GARDEN CITY COMPANY, a corporation, and United States Irrigating Company, a corporation, Appellants,

v.

Charles BENTRUP, Appellee.

No. 5112.

United States Court of Appeals
Tenth Circuit.

Nov. 17, 1955.

Logan N. Green, Garden City, Kan. (Malcolm Miller, Wichita, Kan., Ray H. Calihan, Daniel R. Hopkins, Ray H. Calihan, Jr., Garden City, Kan., on the brief), for appellants.

Donald R. Newkirk, Wichita, Kan. (Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Theodore G. Giesert, Wichita, Kan., on the brief), for appellee.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

Charles Bentrup brought this action against Garden City Company, a corporation, and its subsidiary, United States Irrigating Company, a corporation, to recover damages for loss of crops resulting from the seepage of water on the plaintiff's land from a reservoir owned by the defendants.[1] The complaint charged two elements of negligence: one, maintaining the water in the reservoir at such a high level over long periods of time that the pressure from the water caused the natural underground water table to rise sufficiently so as to appear at or near the surface of the plaintiff's land, and two, failing to maintain the dikes and bottom of the reservoir in a condition to prevent seepage. The case was tried to a jury which returned a verdict in favor of the plaintiff. This appeal is from a judgment entered upon that verdict.

■ The judgment is challenged upon the ground that no cause of action was stated in the complaint, and no facts were proved which as a matter of law would entitle the plaintiff to a judgment. This presents the principal questions for determination.

Kansas General Statutes, 1949, Section 42–321 provides:

"Structures for the prevention of floods and waste; liability for damage. The proprietors of every canal, fountain, ditch, conduit or other works for conveying, collecting, retaining or storing waters shall construct and always maintain in good order and repair the dams, locks and gates, embankments, and all other appurtenances thereof, so that the water conveyed, collected, retained or stored thereby may not flood or damage the premises of others, or any highway, or unnecessarily run to waste, and shall be liable for all damages resulting from their willful or negligent failure to comply with any of the provisions of this act, or from their negligence in the construction, maintenance or operation of any such works."

The parties agree that this statute qualifies the common law rule of absolute liability for damages caused by the escape of impounded water as illustrated in Fletcher v. Rylands, L.R.I. Exch. 265, 1 E.R.C. 235. The statute makes the proprietor responsible for damages caused by willful and negligent acts. We find it necessary to consider only the negligence of the defendants.

■■ Under the statute, a claim for damages caused by water seeping from ditches or reservoirs is in the same category as any other negligence action. In other words, the owner of the irrigation ditch or reservoir is bound to exercise reasonable care and skill to prevent injury to others. The owner is not an insurer against damages and is only liable for damages sustained by others as a result of negligence or unskillfulness in constructing, maintaining or operating a ditch or reservoir. Charvoz v. Bonneville Irr. Dist., Utah, 235 P.2d 780; Taylor v. Roosevelt Irr. Dist., 71 Ariz. 254, 226 P.2d 154, affirmed 72 Ariz. 160, 232 P.2d 107; Knight v. Utah Power & Light Co., 116 Utah 195, 209 P.2d 221; West Union Canal Co. v. Provo Bench Canal & Irr. Co., 116 Utah 128, 208 P.2d 1119; Albrethson v. Carey Valley Reservoir Co., 67 Idaho 529, 186 P.2d 853; Kaylor v. Recla, 160 Or. 254, 84 P.2d 495; Jensen v. Davis & Weber Counties Canal Co., 44 Utah 10, 137 P. 635; Annotation 169 A.L.R. 523. The overwhelming weight of authority is to the effect that the construction or mainte-

1. It is conceded that the defendant, Garden City Company, is responsible for the acts of the United States Irrigating Company.

nance of a ditch or reservoir in a place or upon soil where it is impossible to retain water and prevent seepage constitutes a failure to exercise the required diligence, care and skill in construction, maintenance or operation of such ditch or reservoir, and amounts to negligence. In an early case, Howell v. Big Horn Basin Colonization Co., 14 Wyo. 14, 81 P. 785, 791, 1 L.R.A.,N.S., 596, the Wyoming Supreme Court recognized that negligence must be proved and announced the rule as follows:

> "But if it be true that the ditch was constructed in such a place and manner or through such soil that it was impossible to prevent the continuous and large amount of seepage that occurred, or at least to avoid the injurious consequences thereof, then it might be difficult to find any reasonable basis for holding that the defendant had exercised the required diligence, care, and skill in constructing its canal."

Upon varying facts the rule has generally been followed in other jurisdictions. See Tacea Tsouras v. Brighton & North Point Irr. Co., 119 Utah 354, 227 P.2d 329; Jacoby v. Town of City of Gillette, 62 Wyo. 487, 174 P.2d 505, 177 P.2d 204, 169 A.L.R. 502; Massetti v. Madera Canal & Irrigation Co., 20 Cal. App.2d 708, 68 P.2d 260; Tormey v. Anderson-Cottonwood Irr. Dist., 53 Cal. App. 559, 200 P. 814, 816;[2] Calvert v. Anderson, 73 Mont. 551, 236 P. 847; Jensen v. Davis & Weber Counties Canal Co., supra.

Spurrier v. Mitchell Irr. Dist., 119 Neb. 401, 229 N.W. 273, 74 A.L.R. 884, is not to the contrary. In that case an attempt apparently was made to establish absolute liability without any evidence of negligence except the fact of seepage. The Supreme Court of Nebraska recognized that the owner of an irrigation canal was not an insurer against damages caused by seepage and was liable only for negligence. Edmonds v. Glenn-Colusa Irrigation District, 217 Cal. 436, 19 P.2d 502; Mackay v. Breeze, 72 Utah 305, 269 P. 1026; Cf. Fleming v. Lockwood, 36 Mont. 384, 92 P. 962, 14 L.R.A.,N.S., 628. These cases accept the general rule of liability for damages resulting from negligence, but hold that no negligence was proved.

█ The trial court submitted the case to the jury upon the theory that if the facts were found to be as contended for by the plaintiff, the case came within the foregoing rule. The defendants urge that this furnishes a means of applying the Fletcher-Rylands rule of absolute liability by finding negligence in some form which does not actually exist, and basing the decision on that ground. To some extent this may be true, but the result is in accord with the ancient rule that one must use his own property in such a manner as not to infringe upon the rights of others. Fredericks v. Fredericks, 108 Cal.App.2d 242, 238 P. 2d 643; Albrethson v. Carey Valley Reservoir Co., supra; Kall v. Carruthers, 59 Cal.App. 555, 211 P. 43, 45;[3] Calvert

2. In Tormey v. Anderson-Cottonwood, this language was used:
"To knowingly construct a canal through loose sand or gravel incapable of holding water, in a situation such as that disclosed here, without taking any steps to prevent or control seepage therefrom, would constitute negligence. Turpen v. Turlock Irrigation Dist., 141 Cal. 1, 74 P. 295; Shields v. Orr Extension Ditch Co., 23 Nev. 349, 47 P. [194] 195, If, in the actual operation of a canal, sudden and unexpected damage results by reason of some hidden defect which could not reasonably have been foreseen, the owner would not be

liable in damages, because he is not an insurer, but chargeable only in case of negligence. Sutliff v. Sweetwater Water Co., 182 Cal. 34, 186 P. 766. After discovery of the defect, however, and after reasonable opportunity to correct it, if the owner continue the use, his liability for subsequent damages would be the same as if he had known of the defect at the time of construction."

3. Speaking of the maxim "Sic utere tuo ut alienum non laedas" it was said in Kall v. Carruthers, supra: "It will be noted in the decisions of our own state that the old maxim, 'So use your own

v. Anderson, supra; Moore v. Wallis, 191 Ark. 551, 86 S.W.2d 1111; Morgan v. High Penn Oil Co., 238 N.C. 185, 77 S.E.2d 682. Although the Kansas courts have not had occasion to pass on the question, we have no reason to believe that they would not follow the established rule.

In 1906, the defendants began the constuction of a reservoir known as Lake McKinney in Kearney County, Kansas. The reservoir was made by constructing an earthen dam across an open draw for the purpose of restraining water. The original lake was approximately four miles long and one mile wide and held thirty thousand acre feet of water. The impounded water was diverted from the Arkansas River by means of a canal, was supplemented by drainage of rainfall into the draw, and was used to irrigate about fifteen thousand acres of farm land, most of which was owned by the Garden City Company.

In 1920, the plaintiff purchased from the Garden City Company approximately four hundred acres of farm land located immediately below the reservoir dike. The deed of conveyance contained this provision:

"It is understood that the above described land is near Reservoir Number Five (5) and that the party of the second part, by accepting this deed waives on his own behalf and on behalf of his grantees, heirs, administrators, successors and assigns all claims of any kind and character for damages which he may hereafter sustain by reason of the action of the waves of the reservoir or the water of the reservoir being blown out or otherwise overflowing any of the land hereby conveyed."

The underground water table in the area of the plaintiff's land was relatively near the surface, but for almost thirty years he was able to farm the land and produce excellent crops therefrom without any serious interference from seepage. In 1949, there were extremely heavy rains in Western Kansas which filled the reservoir to capacity and flooded the plaintiff's land. Similar rains and floods occurred in 1951. The floods did not destroy the plaintiff's crops, and there was evidence that silt deposits from the floods benefited the lands. From the time of its first use, the reservoir gradually filled with silt which lessened its capacity and required the defendants to raise the water level in order to store sufficient water to meet their obligations. There was some conflict in the evidence as to the effect of the heavy rains on the underground water table. The plaintiff's expert said it was slight. Beginning in 1949, and continuing through the following years, the water level of the reservoir was maintained on an average of several feet higher than in the preceding years.

It was shown that the underground water table under the plaintiff's land reacted directly in relation to the height of the water in the reservoir. The water table under the land adjacent to the reservoir responded almost immediately to the change in the water level of the reservoir, while it took a longer time for a change to occur underneath the lands further away. The plaintiff's expert testified that the higher average height of the water in the reservoir in recent

as not to injure another's property,' has been so often approved in cases similar to the one at bar, and such cases have been decided by this maxim so many times, that the maxim should be decisive of this case.

"'The law,' says Chief Justice Parker in Thurston v. Hancock, 12 Mass. 220, 7 Am.Dec. 57, 'founded upon principles of reason and common utility, has admitted a qualificaion to' the absolute dominion of the proprietor of lands over it, restricting him 'so to use his own as not to injure the property or impair any actual existing rights of another.'" The opinion was concluded with the words: "We are of the opinion that to permit the defendant to make his lands profitable though it result in the utter destruction of the usefulness of plaintiff's lands, would violate every principle of natural right and justice, and cannot be supported by judicial authority."

years raised the water table under the plaintiff's land approximately one hundred inches, and in low places caused seepage and damage. This was agreed to by one of the defendants' experts. The seepage in question was not the type which inevitably followed the construction and use of the reservoir, but appeared only when the reservoir was filled to a higher level than it had been in previous years.

■ The plaintiff, upon learning of the cause of the seepage, reported it to the defendants' manager and requested that the water level be kept sufficiently low so as not to cause seepage on his land. The manager agreed to comply with the plaintiff's request. Similar conversations were had between the plaintiff and the defendants' manager, but the average high level was maintained and no attempt was made to remedy the condition. Portions of the plaintiff's land became waterlogged, alkali developed on the surface, and it became impossible to harvest some of the crops. There was also evidence of considerable trouble at the base of the dike where it joined the plaintiff's land. It was shown that on various occasions the riprap gradually rotted and washed away; that a tow wall was sunk at the bottom of the reservoir to hold a concrete wall which had been constructed; and that the dirt washed away from this wall and exposed a bed of sand underneath the dike. There was testimony that the dike was built over sand and gravel which was exposed to the water when the riprap and cement wall deteriorated. There was expert evidence that the principal leakage from the reservoir was occurring near the base of the dike at the side of the reservoir where it met the old land surface. Hydrologists testified that the pressure of a greater head of water in the reservoir for longer periods of time would cause the water table to rise under the plaintiff's land. Officials of the defendants knew that water was escaping from the reservoir, and were advised that the maintenance of the water at a high level over long periods of time caused seepage on the plaintiff's land, but they did not change their methods of operation. These facts are analogous to those in the cases hereinbefore cited which sustained judgments against the owners of ditches and reservoirs, and were sufficient to take the instant case to the jury on the question of negligence.

■ The defendants object to two instructions which the court gave to the jury. The first defined "negligence" and "wilfulness". A timely objection to this instruction was not taken as required by Rule 51, Fed.Rules Civ.Proc., 28 U.S. C.A., and will not be considered on appeal as the record affords no basis for an exception to the rule. Atchison, Topeka & Santa Fe R. Co. v. Andrews, 10 Cir., 211 F.2d 264; Allen v. Nelson Dodd Produce Co., 10 Cir., 207 F.2d 296; Smith v. Welsh, 10 Cir., 189 F.2d 832; Garden City Co. v. Burden, 10 Cir., 186 F.2d 651.

The second instruction covered the statutory liability of one who collects and stores water for irrigation. The instruction reads as follows:

"The laws of the state of Kansas permit the collection and storage of water for irrigation by private persons and companies, and no liability arises on the part of such person or company merely by reason of the storage of water in a reservoir.

"The laws of the state of Kansas provide further, however, that:

" 'The proprietors of every canal, fountain, ditch, conduit or other works for conveying, collecting, retaining or storing waters shall construct and always maintain in good order and repair the dams, locks and gates, embankments, and all other appurtenances, thereof, so that the water conveyed, collected, retained or stored thereby may not flood or damage the premises of others, or any highway, or unnecessarily run to waste, and shall be liable for all damages resulting from their wilful or negligent failure to

comply with any of the provisions of this act, or from their negligence in the construction, maintenance or operation of any such works.'

"If you find from the evidence that the defendants wilfully or negligently failed to prevent damage to plaintiff's property by the escape of water from its reservoir, or if you find that damage was caused to plaintiff's property by the negligent operation or maintenance of the reservoir, I instruct you the defendants are liable for all the damage which was the natural and probable consequence of the failure or negligence.

"If you find from the evidence that water was escaping from defendants' reservoir in the manner as contended by plaintiff and that the defendants knew or should have known that fact, I instruct you they are liable for all damage which resulted by reason of such escape of water."

■ The defendants objected generally to this instruction upon the ground that it placed "a higher burden on the defendants than is required by the statutes and the law of the state of Kansas." It is doubtful if the objection meets the standards of definiteness required by Rule 51 which requires the objecting party to state "distinctly the matter to which he objects and the grounds of his objection". Allen v. Nelson Dodd Produce Co., supra. Assuming that this general objection was sufficient to raise the question of the correctness of the instruction, we think

that under the facts it was not prejudicial to the defendants. The court had previously instructed as to what constituted negligence and the proof necessary to establish it.[4] Under our interpretation of the law applicable to the case, the issue was narrowed to the questions of what caused the rising water table under the plaintiff's land, and whether that cause was the result of the defendants' negligence. While the defendants admitted there was leakage from the reservoir, one of their defenses was that the underground water was increased by unusual rainfall and sources other than the reservoir. The theory of the plaintiff's case was that the rising water table was caused by the defendants' maintaining a much higher water level in the reservoir than in previous years when they knew that their action would injure the plaintiff's land. In addition, the plaintiff offered proof that the dam was built on sand and that the defendants negligently permitted portions of the dam to be washed away, exposing the water to the sand and causing an unusual amount of seepage. The effect of the last paragraph of the instruction was that if the jury believed the plaintiff's theory of the case was correct, its verdict should have been for the plaintiff. If it believed otherwise, its verdict should have been for the defendants. See Smith v. Welsh, supra.

■ There is no merit to the defendants' contention that they acquired a prescriptive right to maintain a reservoir in the manner in which they did. It seems quite clear that, in Kansas, one may acquire a prescriptive right to maintain a dam or even a flowage right

---

4. The following instructions were given: "The burden of proof in this case is upon the plaintiff to prove by the preponderance of the evidence substantially as alleged in his complaint that the defendant was guilty of one or more of the acts of negligence or wilfulness charged in his petition and that such negligence or wilfulness was the proximate cause of the injuries and damages sustained. Therefore, if such proof has not been made, you will find for the defendants."

"Negligence and wilfulness cannot be presumed; therefore, the mere fact that plaintiff suffered damage to his crops, if proven, does not constitute proof of negligence or wilfulness on the part of the defendants, or either of them, but you must determine from all the facts and circumstances disclosed by the evidence whether negligence or wilfulness in one or more of the particulars charged actually existed at the time and place in question."

if they are maintained continuously over a statutory period.[5] One acquiring a right by prescription must keep within the right which he acquires. Whitehair v. Brown, 80 Kan. 297, 102 P. 783; Wallace v. City of Winfield, 96 Kan. 35, 149 P. 693; Piazzek v. Drainage District No. 1 of Jefferson County, 119 Kan. 119, 237 P. 1059. The burden is upon the one asserting the right to establish all of the elements of prescriptive use. Fiest v. Steere, 175 Kan. 1, 259 P.2d 140, 145. To establish the right, the use must be substantially the same as that required to obtain title to land by adverse possession. Wagner v. Thompson, 163 Kan. 662, 186 P.2d 278; Phoenix Insurance Co. v. Haskett, 64 Kan. 93, 67 P. 446. The defendants had a legal right to maintain their dam and reservoir, and no prescriptive right was necessary. The complaint and the evidence refer only to that seepage which occurred in 1949 and thereafter and a prescriptive right could not mature in that time.

 The defendants urge that the restriction in the deed conveying the property to the plaintiff constituted a bar to recovery. The language of this restriction is without ambiguity. The plain meaning of the language is clear and not subject to construction. In the restriction the grantee waived claims to damages caused only by reason of the action of the waves of the reservoir or from water being blown out of the reservoir or otherwise overflowing any of the lands conveyed. No reference is made to underground water and there is no language in the restriction which could be construed to refer to underground water. Restrictions in a deed are to be construed in accordance with the intent and purpose of the grantors, and where the intention is clearly and unequivocally expressed, there is no occasion for employing rules of construction. Sporn v. Overholt, 175 Kan. 197, 262 P.2d 828; Anderson v. Rexroad, 175 Kan. 676, 266 P.2d 320.

Finally, the defendants contend that the trial court erroneously permitted the plaintiff to depart from the theories and issues set forth in the complaint and at the pretrial conferences. The basis of this contention seems to be that at the pretrial conferences the plaintiff stated that he would prove erosion of the bottom of the reservoir had occurred because of the introduction of clear water into it, and that as a result, the silt on the bottom of the reservoir was eroded, and permitted the escape of water. It is said that at the trial, the plaintiff abandoned this charge of negligence and sought to prove that the defendants were negligent in maintaining the riprap on the dike and exposing sand to the water which permitted water to escape from the reservoir. We find no objection to the introduction of this evidence on that ground. But even if such objection had been made, we do not think, from an examination of the record, that the issue was excluded by either the pleadings or the issues suggested at the pretrial conferences.

Affirmed.